**GREGG COUNTY APPRAISAL DISTRICT, Appellant,**

v.

**LAIDLAW WASTE SYSTEMS, INC., Laidlaw Waste Systems (Texas), Inc., Laidlaw Waste Systems Holdings, Inc., & Four–S–Oil Co., Appellees.**

Nos. 12–94–00029–CV, 12–94–00030–CV.

Court of Appeals of Texas, Tyler.

May 31, 1995.

Rehearing Overruled July 11, 1995.

Roy Price, Jr., Longview; R. Douglas Muir, Austin, for appellant.

C.W. Stocker, Fort Worth; Edward L. Merritt; and Gregory P. Grajczyk, Longview, for appellees.

HADDEN, Justice.

The previous opinion in this cause which was delivered on March 31, 1995, is hereby withdrawn. The following opinion, which only modifies the previous opinion as it addressed Appellant's points of errors seven through ten, is substituted therefor.

This case involves a dispute over valuations of land for *ad valorem* tax purposes. Appellant, Gregg County Appraisal District ("District"), appeals from two judgments in which the trial court reduced its appraisals of a 250 acre tract of land for tax years 1990, 1991, and 1992, and assessed attorneys' fees and sanctions. The Appellees are: (1) Four–

S–Oil Corporation, Inc. ("Four–S"), a Texas corporation which owns the tract of land in question, (2) Laidlaw Waste Systems (Texas), Inc. ("Laidlaw Texas"), (3) Laidlaw Waste Systems Holdings, Inc. ("Laidlaw Holdings"), and (4) Laidlaw Waste Systems, Inc., a Delaware Corporation ("Laidlaw Delaware"). Laidlaw Texas is a wholly owned subsidiary of Laidlaw Holdings, which in turn is owned by Laidlaw Delaware. We will affirm in part and reverse in part.

The land was leased to Tiger Corporation, a Texas corporation, under an agreement dated March 19, 1981, to be used as a Title I solid Waste landfill. Tiger Corporation was purchased by Laidlaw Holdings and its corporate name changed to Laidlaw Waste Systems (Texas), Inc., a Texas corporation. The term of the lease was for 25 years, and as long thereafter as lessee conducts continuous landfill operations on the premises. In the lease, Four–S appointed Laidlaw Texas as its designated agent for *ad valorem* tax purposes, and this designation was never revoked. The 250 acre tract remained subject to the lease agreement at all times during tax years 1990, 1991, and 1992.

For several years preceding 1990, the District carried the land's appraised value on its tax rolls at $587,220. The District then reappraised the land and increased its appraisal to $7,129,080 for tax year 1990, $8,538,440 for tax year 1991, and $9,455,810 for tax year 1992. After formal protest hearings for each of the three years, the Appraisal Review Board ("Board") issued its "Orders Determining Protests," which approved the District's new valuations for 1990 and 1991. The order reduced the 1992 valuation to $5,914,600; however, this amount nevertheless constituted a ten-fold increase over the appraisals prior to 1990.

The Board's decisions for all three years were appealed to the Gregg County District Court for judicial review. Upon trial *de novo* before a jury, the trial court rendered judgments adverse to the District, finding that the value of the land was $587,220 for each of the three disputed years. In addition, the

trial court awarded attorneys' fees for all three years and sanctioned the District for costs for discovery abuses covering tax years 1990 and 1991. The District brings this appeal.

The District assigns eighteen (18) points of error which we divide into five areas of dispute:

(1) the challenge by the District to the jurisdiction of the trial court for tax years 1990 and 1991 (points one and two);

(2) a dispute over the market value amount listed by the District in the 1990 tax appraisal rolls (points three through six). Because of our holding in point one, we do not reach points three through six;

(3) the claim by the District that the income methodology of appraisal was a proper method and should not have been excluded by the trial court (points seven and ten);

(4) the challenge by the District that evidence supporting the jury's verdict of $587,220 for all three years was legally and factually insufficient (points twelve through fifteen); and,

(5) the complaint by the District that the trial court erred in ordering cost sanctions and awarding attorneys' fees (points eleven and sixteen through eighteen).

## JURISDICTION

■ In points one and two, the District challenges the jurisdiction of the trial court to hear the appeal of the Board's order for tax years 1990 and 1991 on the grounds that the appeal was filed by *Laidlaw Delaware,* who was neither the property owner nor its designated agent for property tax purposes. It argues that neither the property owner, Four–S, nor its agent, *Laidlaw Texas,* filed the appeal within the 45 day time requirement of Section 42.21 of the TEXAS TAX CODE.[1] Section 42.21(a) of the TAX CODE requires that a petition for review of an

---

1. Laidlaw Texas timely filed its appeal in district court for the tax year 1992; therefore, jurisdiction for that year is not challenged.

Appraisal Review Board order must be filed within 45 days after receipt of notice of the final order. Section 42.21(a) further provides that "[f]ailure to timely file a petition bars any appeal under this chapter." The District maintains that Section 42.21 is jurisdictional, and that failure of the property owner or its designated agent to timely file suit deprived the trial court of jurisdiction over the appeal of the Board's "Order Determining Protest" for 1990 and 1991.

The record reflects that after the Board found the appraisal of $7,129,080 for the 1990 tax year to be correct, *Laidlaw Delaware* filed a petition for review in trial court on March 15, 1991. This petition was filed within the 45 day requirement of Section 42.21 of the TAX CODE. When the Board found the $8,538,440 appraisal for 1991 to be correct, *Laidlaw Delaware* amended its petition so as to include the 1991 tax year. This amendment was also filed within the statutory 45 day time period. On July 31, 1992, which was beyond the 45 day time requirement, *Laidlaw Texas* was joined for the first time as a party in the suit. Four–S intervened even later by its "Plea in Intervention" filed on April 19, 1993. By a subsequent trial amendment, Laidlaw Holdings became a party to the proceeding.

Appellees contend that the untimely joinder of Four–S and Laidlaw Texas caused no harm and that the true parties should be allowed to realign themselves properly, even after the 45 day time period. They further assert: (1) that the trial court had obtained jurisdiction over the subject matter; (2) that *Laidlaw Texas* personnel were dealt with through all prior dealings; (3) that the mere use of the word "Delaware" in the name instead of "Texas" is inconsequential, and to find otherwise would be "hypertechnical"; and, (4) that under these circumstances, *Laidlaw Delaware* was the agent of Four–S. The trial court agreed with the Appellees, finding that Laidlaw Delaware was an agent "de facto" of Four–S. However, we conclude that the trial court did not have jurisdiction to hear the appeals for tax years 1990 and 1991.

■ There is ample Texas authority that the rights, procedures, and remedies set forth in the TAX CODE are exclusive, and supersede a property owner's common law rights and remedies. TEX.TAX CODE ANN. § 42.09 (Vernon 1992); *Scott v. Harris Methodist HEB,* 871 S.W.2d 548, 550 (Tex.App.— Fort Worth 1994, no writ); *Watson v. Robertson Co. Appraisal Review Board,* 795 S.W.2d 307, 310 (Tex.App.—Waco 1990, no writ). TAX CODE sections 42.01 (standing to sue), 42.21 (pleadings), 42.25 and 42.26 (relief authorized), all require that the plaintiff be the property owner in order to sue or obtain relief in a tax appeal. The property owner is the only party, other than the chief appraiser, with standing to appeal from an Appraisal Review Board's order determining protest of a taxpayer's appraisal protest. *Plaza Equity Partners v. Dallas Central Appraisal Dist.,* 765 S.W.2d 520 (Tex.App.—Dallas 1989, no writ). Without exception, Texas cases have followed this rule and required the plaintiff to be the owner of the legal title to the property made the subject of a property tax appeal.

■ To obtain a judicial review of an Appraisal Review Board's decision, a property owner must comply with Section 42.21(a) of the TAX CODE. These statutory provisions creating rights and remedies are mandatory and exclusive and must be complied with in all respects. *Hood v. Hays County,* 836 S.W.2d 327, 329 (Tex.App.—Austin 1992, no writ). Where a cause of action and remedy for its enforcement are derived not from the common law but from a statute, "the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." *Texas Catastrophe Property Ins. Ass'n. v. Council of Co-Owners of Saida II Towers Condominium,* 706 S.W.2d 644, 646 (Tex.1986). Where statutory rights and remedies are concerned, the court may act only in the manner provided for by the statute. *Bullock v. Amoco Production Co.,* 608 S.W.2d 899 (Tex.1980). The requirements of this statute are jurisdictional, and the failure of the property owner to timely file its petition appealing an appraisal review board's order determining protest deprives the trial court of jurisdiction over a petition for review of a property tax decision. *Appraisal Review Board v. Int'l*

*Church of the Foursquare Gospel*, 719 S.W.2d 160 (Tex.1986); *Dallas Central Appraisal Dist. v. Las Colinas Corp.*, 814 S.W.2d 816, 818 (Tex.App.—Dallas 1991), *rev'd on other grounds*, 835 S.W.2d 75 (Tex. 1992); *Poly–America, Inc. v. Dallas County Appraisal Dist.*, 704 S.W.2d 936 (Tex.App.—Waco 1986, no writ). Although in *Poly–America* and *Int'l Church of the Foursquare Gospel*, the defect was the failure to name the correct party defendant, we conclude that the jurisdictional principles followed therein apply equally to party plaintiffs where judicial review is sought under Chapter 42 of the TAX CODE.

 In the instant case, the sole plaintiff in the appeal to the trial court from the date the original petition until Laidlaw Texas was joined, was Laidlaw Delaware. The record establishes that Laidlaw Texas is actually a wholly owned subsidiary corporation of Laidlaw Holdings, which is another separate Delaware corporation. In Texas, for the purpose of legal proceedings, subsidiary corporations and parent corporations are separate and distinct "persons" as a matter of law. The separate entity of corporations will be observed by the courts even in instances where one may dominate or control, or may even treat it as a mere department, instrumentality, or agency, of the other. *Norton v. Integral Corp.*, 584 S.W.2d 932, 935 (Tex.Civ.App.—Austin 1979, no writ); *Rimes v. Club Corp. of America*, 542 S.W.2d 909, 912 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). As a result of the separate existence of Laidlaw Delaware, neither Laidlaw Texas nor Four–S could rely upon the filing of the appeal by Laidlaw Delaware to perfect its appeal of the "Orders Determining Protest" for the tax years 1990 and 1991. Since the property owner failed to timely file its petition appealing the review board's order, the trial court had no jurisdiction to review the decision of the Review Board. *See Las Colinas Corp.*, 814 S.W.2d at 818.

 In a further attempt to establish jurisdiction in the trial court for tax years 1990 and 1991, the Appellees asserted a theory of waiver and equitable estoppel. In support of this argument, the Appellees cited a series of cases recognizing exceptions to the passing of deadlines of various statutes of limitations. However, arguments regarding waiver and estoppel relating to cases involving statutes of limitations are simply not applicable to a jurisdictional issue. Jurisdiction over the subject matter of the action or the statutory parties cannot be conferred by consent or waiver, and its lack may be raised at any time. 1 R. McDONALD, *Texas Civil Practice in District and County Courts*, § 3.12, at 228 (Rev.1991); *see also Holland v. Taylor*, 153 Tex. 433, 270 S.W.2d 219 (1954).

 Though not even pled or raised as an argument by Laidlaw Texas, the trial court made the finding that Laidlaw Delaware was "effectively" the agent of the property owner, Four–S, in filing and pursuing the appeal of the Board's orders for tax years 1990 and 1991. In Texas, the only apparent application of the "de facto doctrine" has been limited to the actions of officers, directors, and officials of corporate and governmental entities where bona fide attempts have been made to follow the requirements of the law establishing the corporation or governmental entity, but due to a defect, the corporation or governmental entity does not in fact exist. *Wortham v. Walker*, 133 Tex 255, 128 S.W.2d 1138 (1939); *Eaves v. County of Denton*, 667 S.W.2d 628 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); *Forwood v. City of Taylor*, 209 S.W.2d 434 (Tex.Civ.App.—Austin 1948), *aff'd*, 147 Tex. 161, 214 S.W.2d 282 (1948); *see also* 136 A.L.R. 177. Texas courts have applied this principle simply to protect third parties and the public at large which has relied on the apparent authority of a person acting under the guise of official authority. *Pyote I.S.D. v. Estes*, 390 S.W.2d 3 (Tex.Civ.App.—El Paso 1965, writ ref'd n.r.e.). In this case, there does not exist any "third party" to the purported "de facto agency" arrangement; rather, it is the purported principal, the property owner, seeking the benefit of the implied agency.

 Even if the de facto doctrine were to apply here, the Appellees failed to meet any of the three statutory requirements for establishing Laidlaw Delaware as an agent for the property owner, Four–S. *See* TEX.TAX CODE ANN. § 1.111 (Vernon Supp.1995).

First, Four–S never designated, in writing, Laidlaw Delaware as the agent of the property owner as required under Section 1.111(b). Second, Four–S never revoked the written designation of Laidlaw Texas as agent for the property owner, as required under Section 1.111(c). Finally, more than one agent would represent the property owner in connection with the landfill, in violation of Section 1.111(d). The cases addressing the de facto doctrine require that bona fide attempts must have been made to comply with the requisite statutes. *Payne v. Bracken*, 90 S.W.2d 607 (Tex.Civ.App.—1936), *aff'd*, 131 Tex. 394, 115 S.W.2d 903 (1938); *see also People v. Zimbelman*, 194 Colo. 384, 572 P.2d 830, 832 (1977); *Appeal of Armed Forces Cooperative Insuring Association*, 5 Kan. App.2d 787, 625 P.2d 11, 16 (1981). Certainly, under the facts of this case, no attempt was made to follow any of the strict requirements of Section 1.111 of the TAX CODE with respect to a designation of Laidlaw Delaware as an agent of the property owner, Four–S.

We conclude that, as a matter of law, neither the property owner (Four–S), nor its designated agent (Laidlaw Texas), timely perfected an appeal of the Appraisal Review Board's "Order Determining Protest" of property values for tax years 1990 or 1991, as required under TAX CODE section 42.21(a). Accordingly, we hold that the trial court did not have jurisdiction, and therefore committed error in rendering judgments for tax years 1990 and 1991. Appellant's first and second points of error are *sustained.*

As previously noted, because of our holding in point one, we do not reach points three through six which relate to the dispute over the market value amount listed in the 1990 Tax Appraisal Rolls.

### APPRAISAL METHODOLOGY

■ In points seven and eight, the District complains that the trial court erred in excluding the expert testimony and appraisal reports of James K. Norwood. Point nine addresses the trial court's failure to admit one of the appraisal reports of the Appellees' expert, Jerry R. Jones, which was offered by the District on the issue of market value. In point ten, the District claims that the trial court erred in denying the District's request to cross-examine Jones. In view of our disposition of points of error one and two on jurisdictional grounds, it will only be necessary for us to address points of error seven through ten as they relate to tax year 1992.

The District retained the services of MAI [2] appraiser James K. Norwood as its expert. Before trial, Norwood was deposed extensively by Laidlaw Texas and Four–S. Laidlaw Texas retained Jerry R. Jones as its MAI appraiser. Jones performed two separate income approach appraisals.

At trial, the District offered the testimony and appraisal reports of Norwood on the issue of market value and attempted to cross-examine Jones on one of his appraisal reports. Laidlaw Texas challenged Norwood's approach to the appraisal on the grounds that it included: (1) intangible matters, such as the Laidlaw Texas landfill permit; and (2) the business income of Laidlaw Texas, which included the landfill operation as a business enterprise. It claimed that, if an income approach was used, it should be the income to the landowner, Four–S, under its lease, and not the income to Laidlaw Texas.

The record reflects that the trial court was faced with two income methods of appraisal. One method was the "Leased Fee Approach" which involved estimating future lease proceeds paid by Laidlaw Texas to Four–S, deducting appropriate expenses and then discounting the figures to the present worth. This method was used by Jones in his second appraisal of the land for tax years 1990, 1991, and 1992. Jones' second appraisal was admitted into evidence.

The other method was the "Discounted Cash Flow Analysis" approach which involved a detailed study of Laidlaw Texas' income and expense statements from the landfill enterprise for 1989 through 1992, then estimating its future income and expenses during its remaining estimated life and discounting it to a present value. This method was used by Jones in his first appraisals for tax years 1990 and 1991. This

2. Member of the Appraisal Institute.

same method was also used by Norwood in his appraisals for tax years 1990, 1991, and 1992. Norwood, more than once, described his approach as an appraisal to establish the market value of the *"Pinehill Landfill Facility."*

In a series of rulings, the trial court excluded any oral or written expert opinions by Norwood and Jones based upon the "Discounted Cash Flow Analysis," which was the appraisal methodology that utilized such matters as intangibles, government licenses and permits, income stream of the business of Laidlaw Texas, the landfill operation as a "going concern," the marketing, business acumen, and skills of Laidlaw Texas, and that focused on Laidlaw Texas as a going business concern rather than focusing upon the land itself. The trial court noted that it would be deceptive and speculative to try to "take out the intangibles," and then ruled that the appraisal testimony and reports would be excluded under Rule 403 of the TEXAS RULES OF CIVIL EVIDENCE in order to avoid confusion of the issues and to prevent the jury from being misled.

In excluding such evidence, the trial judge went on to clarify that the court would allow evidence from the expert appraisers which dealt with the usage of the property, the highest and best use of the property, the potential and feasible uses of the property, closure costs, residual values, and comparable sales of landfill acreage which was sold as land and not as a going business or enterprise. The District, however, elected not to offer any of such evidence through Norwood's testimony and reports, and elected not to cross-examine Jones on such matters.

On appeal, the District contends that the trial court erred in excluding the evidence of the income methodology employed by Norwood, and by Jones in his first appraisal, arguing that it constitutes an approved and acceptable method of appraisal of land used as solid waste landfills. It asserts that the application of generally accepted appraisal techniques necessarily includes a consideration of the income stream that the landfill could generate. The District insists that the trial court erred in excluding this evidence,

arguing that it is the only appropriate method of appraising a sanitary landfill.

■■■■■ The decision whether to admit or exclude evidence is within the trial court's discretion. *See Champlin Oil & Refining Co. v. Chastain,* 403 S.W.2d 376, 389 (Tex. 1965). Under Rule 403, a trial judge may exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." TEX. R.CIV.EVID. 403. The expert's testimony is subject to TEXAS RULE OF CIVIL EVIDENCE 702 scrutiny as to whether it aids the trier of fact, and it may further be tested by Rule 403 to avoid confusing or misleading the jury. *DeLeon v. Louder,* 743 S.W.2d 357 (Tex. App.—Amarillo 1987, writ denied). Even if the trial court abused its discretion in excluding evidence, this error is not reversible unless it "was reasonably calculated to cause and probably did cause a rendition of an improper judgment in the case." *Harrison v. Texas Employers Ins. Ass'n,* 747 S.W.2d 494, 498 (Tex.App.—Beaumont 1988, writ denied); *see also,* TEX.R.APP.P. 81(b)(1). Reversible error does not usually occur in connection with evidentiary rulings unless the appellant demonstrates that the whole case turns on the particular evidence excluded or admitted. *See Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 837 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

■■■ In the instant case, the trial court did not abuse its discretion in excluding the evidence since its probative value was substantially outweighed by the potential for confusion of the issues. In arriving at the appraisal amount, the excluded appraisals implicitly included Laidlaw Texas' permit from the state to operate the solid waste landfill on the property, and Laidlaw Texas' servicing of privately negotiated waste disposal contracts. Such licensing and contracts constitute intangible personal property, *see* TEX.TAX CODE ANN. § 1.04(6) (Vernon Supp.1992), and are generally not taxable under the Tax Code. *See* TEX.TAX CODE ANN. § 11.02(a) (Vernon 1992). As a result, the appraisals created confusion by suggesting

that such non-taxable intangible property could be taxed along with the real property in question. In addition, the appraisals commingled the value of the business with the value of the property.

The "Leased Fee Approach," which was used by Jones in his second appraisal, is based upon the views expressed in the *Land Appraisal Journal* which stated: "An appraiser's obligation is clear. To the extent that business or going concern value exists, it should be recognized as a value separate and distinct from the value of the real property with which it is associated.... Common valuation errors and inclusion of business value may occur if the value of management and retail operations are not excluded when using the income ... approach to value." G.R. KARVEL AND P.J. PATCHIN (MAI appraisers), *Land Appraisal Journal,* October Issue, 1992.

In the instant case, the income used by the excluded appraisals was income which was generated not only by the manner in which Laidlaw Texas used the land in question, but by the use of its capital, trucks, equipment, machinery, trained personnel, contracts, and business acumen in running the waste disposal enterprise. Neither of the excluded appraisal reports identifies what part of Laidlaw Texas' income is derived from the land and what part is attributable to the other assets. Though Norwood may have denied that his report included such business matters, the evidence offered at the bill of exceptions hearing shows that he used a methodology of appraisal that relied heavily on intangibles and the business income of Laidlaw Texas. The portions of the appraisals utilizing intangibles and business income would cause confusion to the trier of fact. Thus, the trial court properly excluded the appraisal evidence.

The District claims that the income methodology employed by Norwood in valuing real property was proper since it has been recognized and accepted by Texas courts. In support of this assertion, the District relies upon the facts and holdings in *Missouri–Kansas–Texas R.R. Co. v. City of Dallas,* 623 S.W.2d 296 (Tex.1981), and *Polk County v. Tenneco, Inc.,* 554 S.W.2d 918 (Tex.1977).

Citing *Polk County,* the District further contends that the trial court should have admitted the evidence since any attack thereon goes to the weight of the evidence, rather than its admissibility.

Neither case is controlling for several reasons. First, neither case discusses or supports the use of intangibles, such as government permits or matters of business enterprise, in determining an appraisal amount. Instead, both cases focus upon the unit valuation approach as a valid technique for the appraisal of unique types of properties. *See Missouri–Kansas–Texas R.R. Co.,* 623 S.W.2d at 299–300 (railroad right-of-ways can be valued by unit approach); *Polk County,* 554 S.W.2d at 921 (gas transmission line right-of-ways valued by unit approach). Moreover, both cases deal with the *sufficiency* of the expert evidence, either to raise a fact issue as to valuation or to support the legal sufficiency of the evidence; neither addresses the trial court's discretion involved in excluding such evidence based upon the facts of a particular case. Thus, these cases are not directly applicable to the instant case.

We conclude that the trial court's decision to exclude evidence that included the income stream of the business operation of Laidlaw Texas, the government permit and other intangibles as part of the appraisal report was not an abuse of discretion. Moreover, any probative value would be substantially outweighed by the prejudicial effect and by the danger of confusing the issues. Therefore, the trial court did not err in excluding the evidence. The District's points of error seven through ten as they relate to the 1992 tax year are overruled.

SUFFICIENCY OF THE EVIDENCE

■ In their twelfth and thirteenth points of error, the District contends that there is no evidence to support the jury's verdict involving Tax Years 1991 and 1992. In points fourteen and fifteen, the District argues that the verdicts involving those tax years were against the great weight and preponderance of the evidence. In view of our disposition of points of error one and two on jurisdictional grounds, we do not reach points twelve and fourteen. We will address

points of error thirteen and fifteen, as they relate to tax year 1992.

The standard of review for a legal sufficiency of the evidence challenge is that we must examine the evidence in the light most favorable to the verdict to determine whether there is any probative evidence or reasonable inferences to be drawn therefrom which support the finding and we must disregard all evidence or inferences to the contrary. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264 (Tex.App.—Amarillo 1988, writ den'd). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *In re DeVine,* 869 S.W.2d 415 (Tex.Civ.App.—Amarillo 1953, no writ). The standard of review for a factual insufficiency challenge requires us to set aside the verdict only if the evidence is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175 (Tex.1986).

There was evidence before the jury that the District had, for previous years, appraised the property at $587,220.00 and that Laidlaw Texas and Four–S participated with the District in the previous valuation processes. The District takes the position, however, that past assessments should be excluded for the reason that tax assessments rarely reflect the market value, and cites *Houston Lighting & Power Co. v. Fisher,* 559 S.W.2d 682 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). This position is tenable when there is no participation of the landowner, as was the situation in *Fisher.* However, in the instant case, there was sufficient evidence of participation by the landowner or its agent during the prior years' proceedings, which established the valuation for tax purposes at $587,220.00.

The record also reflects that there was no change in the circumstances surrounding the use and value of the subject property between the prior years and 1992 which would have increased or decreased the value of the property. Further, the record reflects that there was valuation testimony with a range from $162,500.00 to $1,936,000.00. The $587,220.00 was well within this range.

For the above reasons, we hold that the evidence was legally and factually sufficient to support the finding of the jury that the value of the land for the tax year 1992 was $587,220.00. Points of error thirteen and fifteen are overruled.

## ATTORNEYS' FEES & SANCTIONS

In point eleven, the District contends that the trial court erred in awarding attorneys' fees to Appellees for tax year 1990, arguing that the order issued by the Board was not under the TAX CODE. Section 42.29 of the TAX CODE provides that "A property owner who prevails in an appeal to the court under Section 42.25 ... of this Code may be awarded reasonable attorneys' fees...." Section 42.25 provides that "if the court determines that the appraised value of property according to the appraisal roll exceeds the appraised value required by law, the property owner is entitled to a reduction of the appraised value on the appraisal roll to the appraised value determined by the court." Since the Appellees "prevailed" in the trial court for all three tax years, and based on these relevant sections of the TAX CODE, the trial court included in its judgments an award of attorneys' fees for all three years.

It is not necessary that this issue be decided under the TAX CODE. Because of our holding that the trial court had no jurisdiction to hear the appeals for tax years 1990 and 1991, it necessarily follows that the trial court had no authority to award attorneys' fees for not only tax year 1990, but tax year 1991 as well.[3]

Finally, in points sixteen through eighteen, the District complains that the sanction order of the trial court awarding costs of $7,500.00 to Laidlaw Texas for alleged discovery abuses was an abuse of the

---

3. Appellees prevailed in their appeal for tax year 1992 and the district court judgment awarding attorneys' fees for that year remains undisturbed. However, the judgment which combines attorneys' fees for 1991 and 1992 into one lump sum ($41,084.00) should be modified to reflect the 1992 attorneys' fees only, which the record reflects to be a stipulated sum of $16,750.00.

trial court's discretion, was void for lack of prior notice, and was void for lack of subject matter jurisdiction. Again, this Court has determined that the trial court lacked jurisdiction to hear the appeal for tax years 1990 and 1991, which were the only tax years involved on the date the trial court ordered sanctions. Accordingly, we hold that the trial court had no subject matter jurisdiction to render such an order. Point of error eighteen is *sustained.* We do not deem it necessary, therefore, to address the complaint that the trial court abused its discretion (point sixteen), or that there was a lack of prior notice (point seventeen).

Accordingly, we affirm the judgment in part, reverse and render in part, and remand the remainder to the trial court for further proceedings in accordance with this opinion.