# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00784-CV

**Travis Central Appraisal District and Travis County Appraisal Review Board, Appellants**

**v.**

**Marshall Ford Marina, Inc.; S & W Marina, LLP; Joe J. Higginbotham Inc., d/b/a Cap Co.; Molecular Imprints, Inc.;  AR & JR Radio Towers #1 LP; Danly Properties, Inc.; Unique Cabinets, Inc.; 1080 Inc.; Breed & Co.; and Land Rover Austin LP, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. GN401350, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Texas law is well established that the remedies available to taxpayers under the Texas Tax Code are exclusive.  Tex. Tax. Code Ann. § 42.09 (West 2008);[1] *see, e.g.*, *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006); *Gregg County Appraisal Dist. v. Laidlaw Waste Sys., Inc.*, 907 S.W.2d 12, 16 (Tex. App.—Tyler 1995, writ denied); *Scott v. Harris Methodist HEB*, 871 S.W.2d 548, 550 (Tex. App.—Fort Worth 1994, no writ); *Watson v. Robertson County Appraisal Review Bd.*, 795 S.W.2d 307, 310 (Tex. App.—Waco 1990, no writ).  The question presented in this appeal is whether a taxing authority, as opposed to a taxpayer, is subject to the same

---

[1]  For convenience, we cite to the current version of the tax code unless otherwise noted.

exclusive remedies as provided by statute. Because we conclude that it is, we affirm the district court's judgment.

## BACKGROUND

This appeal concerns a challenge to ad valorem taxes for tax year 2003 and arises from property tax protests brought by various taxpayers, including appellees Marshall Ford Marina, Inc.; S & W Marina, LLP; Joe J. Higginbotham Inc., d/b/a Cap Co.; Molecular Imprints, Inc.; AR & JR Radio Towers #1 LP; Danly Properties, Inc.; Unique Cabinets, Inc.; 1080 Inc.; Breed & Co.; and Land Rover Austin LP,[2] against the Travis Central Appraisal District (the "District") and decided by the Travis County Appraisal Review Board (the "Board").[3] In the spring of 2003, the District issued tax notices to the Taxpayers notifying them of their appraised property values for ad valorem tax purposes. The Taxpayers did not file a protest as authorized by the tax code. *See* Tex. Tax Code Ann. § 41.41 (West 2008) (authorizing taxpayer protest). The Board approved the 2003 appraised values for inclusion on the 2003 appraisal roll on July 24, 2003. That same day the District's chief appraiser certified the 2003 appraisal roll to the taxing units.

---

[2] We refer to the appellees collectively as the "Taxpayers" unless otherwise noted. The Taxpayers are ten businesses who own business personal property in Travis County. The record reflects that Hardin Interests, Inc.; Student Legacy, LP; and NFP Insurance Services, Inc., three taxpayers who were originally named in the suit against the District and the Board, nonsuited their claims prior to trial.

[3] We refer to the District and the Board collectively as the "appellants."

After the appraisal roll was certified by the Board, the various Taxpayers filed amnesty rendition statements as allowed under former subsection 22.23(c) of the tax code.[4] *See* Act of May 31, 2003, 78th Leg., R.S., ch. 1173, § 6, 2003 Tex. Gen. Laws 3353, 3355-56 (expired Jan. 1, 2005). After receipt of the Taxpayers' amnesty rendition statements, the Board on January 6, 2004, issued notices ("First Appraisal Notices") proposing changes to the 2003 appraised values of the Taxpayers' business personal property. The First Appraisal Notices allowed each taxpayer to protest the proposed change in value by filing a written protest within 30 days, which the Taxpayers did. *See* Tex. Tax Code Ann. § 41.41 (West 2008). In their notices of protest, the Taxpayers alleged that appellants' actions were unlawful and outside the provisions of the tax code, the actions of the chief appraiser and the Board in increasing the value of the Taxpayers' business personal property after the appraisal roll had been certified were without legal authority, and appellants violated due process by failing to give proper notice and an opportunity to be heard before approving the value increase. The record reflects that the District did not amend the First Appraisal Notices in response to the Taxpayers' protests or otherwise request a continuance to do so.

---

[4] As it existed at the time, subsection 22.23(c) provided:

> If before December 1, 2003, a person files a rendition statement for the 2003 tax year that provides the information required by Section 22.01 as that section exists on January 1, 2004, and, as a result of that information, the chief appraiser discovers that some or all of that person's tangible personal property used for the production of income was omitted from the appraisal roll in one of the two preceding years, the chief appraiser may not add the value of the omitted property to the 2001 or 2002 appraisal roll. This subsection expires January 1, 2005.

Act of May 31, 2003, 78th Leg., R.S., ch. 1173, § 6, 2003 Tex. Gen. Laws 3353, 3355-56 (expired Jan. 1, 2005).

3

The Board held multiple hearings on the Taxpayers' protests on February 10th, March 9th, and June 11th, 2004 ("First Protest Hearings"). The transcript from the February 10th hearing demonstrates the Taxpayers' arguments.[5] At that hearing, the Taxpayers argued that the District could not alter the appraised values of the Taxpayers' property after the appraisal roll had already been certified. *See id.* § 25.25 (West 2008). The Taxpayers further argued that, even if the proposed increase in value was the result of omitted property, the District had failed to comply with the statutory prerequisites for adding omitted property to the appraisal roll. *See id.* §§ 25.19 (requiring notice), .21 (omitted property) (West 2008). In addition, the Taxpayers argued that the District failed to demonstrate that the proposed increase in appraised value was the result of omitted property.

After the First Protest Hearings, the Board issued final orders ("First ARB Orders") in favor of the Taxpayers setting the appraised value of the Taxpayers' property at the original 2003 appraised values. The First ARB Orders do not state the grounds on which the Board ruled in the Taxpayers' favor. Although section 42.02 of the tax code authorized the chief appraiser, upon written approval of the District's board of directors, to appeal the First ARB Orders to district court, the chief appraiser did not appeal.[6]

---

[5] The parties stipulated at trial that the transcript of the February 10, 2004, hearing represented the positions of all parties involved, including the Taxpayers, the District, and the Board.

[6] At the time of the First ARB Orders, section 42.02, entitled "Right of Appeal by Chief Appraiser," provided:

> On written approval of the board of directors of the appraisal district, the chief appraiser is entitled to appeal an order of the appraisal review board determining:

> (1)     a taxpayer protest as provided by Subchapter C, Chapter 41; or

Thereafter, the Taxpayers received another 2003 Notice of Appraised Value ("Second Appraisal Notices"). The Second Appraisal Notices were issued for the same property, at the same location, and for the same tax year that the District previously contended was omitted from the appraisal roll during the First Protest Hearings. Rather than increasing the entire value of the Taxpayers' property for 2003, the Second Appraisal Notices established supplemental accounts only for the increase in value that the District contended was omitted property and had previously tried to add in the First Appraisal Notices. In a cover letter that accompanied the Second Appraisal Notices, the District's director of business personal property stated:

> The enclosed 2003 Notice of Appraised Value is in reference to omitted business personal property that has been supplemented to the Travis Central Appraisal District (TCAD) 2003 appraisal records in response to a 2003 special amnesty rendition submitted by the above referenced account. TCAD had previously delivered notification of having added this omitted property in an appraisal review board decision letter informing the business or its registered agent of the increase in value on the main account . . . .
>
> A protest of that omitted property value increase was filed, and at the ensuing hearing the Travis County Appraisal Review Board determined that TCAD had not acted in accordance with Section 25.21 of the Texas Property Tax Code on the appropriate procedure to communicate the addition of omitted property, resulting in the value being set back to the appraised value reflected on the account's original 2003 Notice of Appraised Value. The enclosed Notice of Appraised Value is a supplemental account that will be active for 2003 only, and represents the amount of the value reduction arrived at in that hearing.

The Taxpayers protested the chief appraiser's proposed actions as authorized by

---

(2)     a taxpayer's motion to change the appraisal roll filed under Section 25.25.

Act of May 17, 2001, 77th Leg. R.S., ch. 1430, § 32, sec. 42.02, 2001 Tex. Gen. Laws 5109, 5121 (codified as amended at Tex. Tax Code Ann. § 42.02 (West 2008)).

statute. *See id.* § 41.41 (allowing taxpayer protest). Additional hearings were held before the Board on June 1, 2004, June 11, 2004, and February 8, 2005 ("Second Protest Hearings"). After the Second Protest Hearings, the Board issued final orders ("Second ARB Orders") in favor of the District increasing the appraised values of the Taxpayers' business personal property by the amounts proposed by the District in the Second Appraisal Notices. The Taxpayers appealed the Second ARB Orders to the district court seeking reversal of those orders and attorney's fees.

After a bench trial, the district court rendered judgment in favor of the Taxpayers. In its final judgment, the district court found "that the First ARB Orders were final and dispositive of all issues raised at the First Protest Hearings, including the conclusion that there was no property omitted from the appraisal roll." The judgment further stated that the "Second Appraisal Notices are null and void pursuant to section 25.25 of the Tax Code."[7] The district court also issued findings of fact and conclusions of law. In relevant part, the district court found:

2.      In the spring of 2003, the [District] appraised the business personal property of the [Taxpayers] and issued Notices of Appraised Property Value for 2003 to the [Taxpayers].

3.      The 2003 appraised values of the [Taxpayers'] business personal property were approved by the [Board] on July 24, 2003.

4.      The chief appraiser of [the District] certified the 2003 appraisal roll to the taxing units on July 24, 2003.

5.      [The District] sent a form letter to all owners of taxable business personal property in Travis County, including the [Taxpayers], regarding Senate Bill 340, now section 22.23(c) of the Texas Tax Code.

_____

[7] The district court declined to award attorney's fees to the Taxpayers, but the Taxpayers do not raise that issue on appeal.

6

6.   After the [Board] approved and certified the 2003 values of the [Taxpayers']
     personal property, the [Taxpayers] submitted amnesty renditions to [the
     District].

7.   After receiving the [Taxpayers'] amnesty renditions, [the District] issued
     corrected notices of value for 2003, (the First Appraisal Notices).

8.   In the First Appraisal Notices, the column entitled "2003 Previous Value"
     contains the 2003 appraised value of the [Taxpayers'] property as originally
     certified by the [Board] and the column entitled "2003 Corrected Value"
     represents the original certified values plus the increases over and above the
     previously certified values for what [the District] believed was omitted
     property revealed from the [Taxpayers'] amnesty renditions.

9.   The [Taxpayers] protested [the District's] First Appraisal Notices, i.e. the
     corrected notices of 2003 value, and their representatives appeared at formal
     hearings before the [Board] on February 10, March 9, and June 11, 2004 (the
     First Protest Hearings).

10.  The transcript from the February 10, 2004 First Protest Hearing represents
     both the [Taxpayers'] and the [District's] positions for all of the First Protest
     Hearings.

11.  During the First Protest Hearings, the [Taxpayers] contended, among other
     things, that they had no omitted property from the appraisal roll and that [the
     District] had no authority to increase the appraised values of their property
     over and above the previously 2003 certified values as such increases were
     prohibited by section 25.25 of the Tax Code.

12.  After the First Protest Hearings concluded, final orders were issued pursuant
     to section 41.47 of the Tax Code, (the First ARB Orders).

13.  The First ARB Orders did not increase the values of the protested accounts
     over and above the previously certified 2003 values and thus did not add the
     value of what [the District] contended was omitted property of the
     [Taxpayers] to the 2003 appraisal roll.

14.  Neither the Chief Appraiser nor [the District] appealed the First ARB Orders
     to district court pursuant to section 42.02 of the Tax Code.

15. The First ARB Orders were dispositive of all issues raised during the First Protest Hearings, including the issue that there was no omitted property from the appraisal roll.

16. After the First ARB Orders were issued, [the District] issued new appraisal notices to the [Taxpayers], (the Second Appraisal Notices).

* * *

19. The values contained in the Second Appraisal Notices were the exact same values that [the District] previously sought to add to the appraisal roll, as omitted property, in the First Appraisal Notices.

* * *

21. [The District] asserted the same position in the First Protest Hearings that it did in the Second Protest Hearings, which was that the [Taxpayers] had omitted property from the 2003 appraisal roll.

* * *

23. After the Second Protest Hearings, the [Board] ruled in favor of [the District] and against the [Taxpayers] and issued final orders (the Second ARB Orders), which added value for what [the District] contended was omitted property and that the [Board] previously refused to add during the First Protest Hearings.

The district court also entered the following conclusions of law relevant to this appeal:

1. The First ARB Orders were dispositive of all issues raised during the First Protest Hearings, including the issue that there was no omitted property from the appraisal roll.

2. The Second Appraisal Notices are null and void pursuant to section 25.25 of the Tax Code.

3. [The District] had no legal authority to issue the Second Appraisal Notices.

8

4.      The only available remedy to [the District] for redress of the First ARB Orders was an appeal to district court pursuant to 42.02 of the Tax Code.

5.      In light of the detailed nature of the procedures prescribed by the Legislature, [the District] had no implied authority under the Tax Code to issue the Second Appraisal Notices.

6.      Since [the District] had no lawful authority to issue the Second Appraisal Notices, the values contained in the Second ARB Orders are null and void.

This appeal followed.

## DISCUSSION

Appellants raise seven issues challenging the district court's judgment.[8] In these issues, appellants argue that they were not required to appeal the First ARB Orders and that they were permitted to issue new appraisal notices to correct the notice defects alleged in the Taxpayers' protests and to add the Taxpayers' omitted property to the appraisal roll. The Taxpayers counter that the First ARB Orders were final orders and were dispositive of all issues raised at the First Protest

---

[8] Specifically, appellants contend that the district court erred: (1) in finding that the First ARB Orders were dispositive of all issues raised at the First Protest Hearings (Finding of Fact No. 15); (2) in concluding that the First ARB Orders were dispositive of all issues raised at the First Protest Hearings (Conclusion of Law No. 1); (3) in concluding that the Second Appraisal Notices were null and void pursuant to section 25.25 of the tax code (Conclusion of Law No. 2); (4) in concluding that the District had no legal authority to issue the Second Appraisal Notices (Conclusion of Law No. 3); (5) in concluding that the only remedy available to the District was to appeal the First ARB Orders (Conclusion of Law No. 4); (6) in concluding that the District had no implied authority to issue the Second Appraisal Notices (Conclusion of Law No. 5); and (7) in concluding that the values contained in the Second ARB Orders were null and void (Conclusion of Law No. 6).

9

Hearings and that, in order to challenge the First ARB Orders, appellants were required to appeal those orders to the district court. Because we conclude that the question of appellants' available remedy is dispositive of this appeal, we turn to that issue.

***Available Remedy***

In their fifth issue, appellants complain that the district court erred in concluding that the only remedy available to the District for redress of the First ARB Orders was an appeal to district court pursuant to section 42.02 of the tax code. We review the district court's conclusions of law *de novo*. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Appellants argue that they were not required to pursue their available remedies under the tax code and were authorized to issue new appraisal notices after the Board rendered the First ARB Orders rejecting the District's proposed increases in property value. We disagree.

In *Cameron Appraisal District v. Rourk*, the supreme court reaffirmed that the Texas Tax Code provides detailed administrative procedures for those who would contest their property taxes. 194 S.W.3d at 502. And the court reaffirmed that administrative decisions of an appraisal review board are final if not appealed to the district court within 45 days. *Id.* (citing Tex. Tax Code Ann. § 42.21(a) (West 2008)[9]).

Here, it is undisputed that neither the District nor the Board appealed the First ARB Orders as authorized in section 42.02 of the tax code as it existed at the time. *See* Tex. Tax Code Ann. § 42.02, *supra*, note 6. Instead, appellants issued the Second Appraisal Notices in an attempt

---

[9] Section 42.21(a) has not been amended since the supreme court decided *Cameron Appraisal District v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006).

10

to circumvent the Board's First ARB Orders, which denied the District's proposed increases to the 2003 appraised values of Taxpayers' business personal property. We conclude that the issuance of the Second Appraisal Notices was an impermissible collateral attack against the First ARB Orders, which were final and appealable. *See* Tex. Tax. Code Ann. § 42.21(a) (petition for review must be filed within 45 days of final order, otherwise appeal is barred); *Hood v. Hays County*, 836 S.W.2d 327, 329 (Tex. App.—Austin 1992, no writ) (finding that property owner who failed to follow procedures in tax code could not collaterally attack decision of appraisal review board in subsequent lawsuit).

The plain language of section 42.02 of the tax code as it existed at the time authorized the District's chief appraiser to appeal the First ARB Orders. The legislature thus provided appellants with an exclusive remedy to challenge orders of the appraisal review board. *See* Tex. Tax Code Ann. § 42.02 (providing right of appeal by chief appraiser); .09 (remedies under tax code are exclusive); *see also Rourk*, 194 S.W.3d at 502 (remedies under tax code are exclusive); *Laidlaw Waste Sys.*, 907 S.W.2d at 16 (same); *Scott*, 871 S.W.2d at 550 (same); *Watson*, 795 S.W.2d at 310 (same). Because the legislature provided an exclusive remedy, appellants could not simply ignore the First ARB Orders. *See In re Ament*, 890 S.W.2d 39, 41 (Tex. 1994) (where statute provides exclusive remedy, that remedy must be followed); *Dallas v. Wright*, 36 S.W.2d 973, 974 (Tex. 1931) (same). In order to challenge the First ARB Orders, appellants were required to appeal those orders to district court as authorized in section 42.02 of the tax code.[10] *See* Tex. Tax Code

---

[10] To the extent appellants argue that they were entitled to issue the Second Appraisal Notices to correct the notice defect alleged by the Taxpayers in the First Protest Hearings, this argument is without merit. Had appellants wished to correct the alleged notice defect, they should

11

Ann. §§ 42.02, .09; *Rourk*, 194 S.W.3d at 502; *Laidlaw Waste Sys.*, 907 S.W.2d at 16; *Scott*, 871 S.W.2d at 550; *Watson*, 795 S.W.2d at 310; *see also Ament*, 890 S.W.2d at 41; *Dallas*, 36 S.W.2d at 974.  Having chosen to forego the exclusive remedy available under the tax code, we conclude that appellants waived any error in the First ARB Orders and cannot now pursue an impermissible collateral attack against those orders.[11]  *See Hood*, 836 S.W.2d at 329-30.  We overrule appellants' fifth issue.  Moreover, because the question of appellants' available remedy is dispositive of this appeal, we decline to reach appellants' remaining issues.

---

have requested a continuance or adjournment of the First Protest Hearings to do so.  Moreover, even if the notice was defective, the Board was required to determine the merits of the Taxpayers' protests "on any other grounds of protest authorized"—including the Taxpayers' claim that they had no omitted property.  *See* Tex. Tax Code Ann. § 41.411(b) (West 2008); *see also Midland Cent. Appraisal Dist. v. Plains Mktg., L.P.*, 202 S.W.3d 469, 475-76 (Tex. App.—Eastland 2006, pet. denied) (finding that issue had been presented to and decided by appraisal review board even though taxpayer had not included issue in notice of protest and rejecting argument that taxpayer failed to exhaust administrative remedies).  Therefore, once the Board issued the First ARB Orders in favor of the Taxpayers, those orders were final and subject to review only by way of appeal to district court.  *See* Tex. Tax Code Ann. §§ 42.02, .21 (West 2008).  The issuance of the Second Appraisal Notices was more than an attempt to correct the alleged notice defect; it was an end-run around the effects of the First ARB Orders and the exclusive remedy of appeal provided in the tax code.

[11] We likewise reject appellants' argument that this Court's decision in *Mag-T, L.P. v. Travis Central Appraisal District*, 161 S.W.3d 617 (Tex. App.—Austin 2005, pet. denied), controls the outcome of this appeal.  In that case, the taxpayers filed a suit for declaratory judgment and injunctive relief without filing a protest or otherwise exhausting their administrative remedies.  *See id.* at 623.  After initially granting a temporary restraining order, the district court dismissed the lawsuit for lack of jurisdiction on the grounds that the taxpayers failed to exhaust their administrative remedies.  *Id.* at 623.  Finding no exception for the taxpayers' failure to exhaust, this Court affirmed.  *Id.* at 635.  Unlike the circumstances presented in *Mag-T*, it is appellants, not the Taxpayers, who have failed to follow the exclusive remedies set forth in the tax code.

**CONCLUSION**

Having determined that appellants waived any error by failing to pursue the exclusive remedy of appeal as authorized in the tax code, we affirm the district court's judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton
    Chief Justice Law not participating[12]

Affirmed

Filed:   September 9, 2009

---

[12] Because former Chief Justice Law was originally assigned to author this opinion, authoring duties were reassigned as of August 4, 2009.