**Opinion issued November 24, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-20-00081-CV

_____

**LARRY BREWER AND LINDA BREWER, Appellants**

**V.**

**DEBRA MOORE FOUNTAIN, Appellee**

**On Appeal from the County Court at Law No. 2**
**Hays County, Texas[1]**
**Trial Court Case No. 16-0071-P**

**MEMORANDUM OPINION**

---

[1] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases between courts of appeals).

This is the second appeal involving the construction of Ralph O. Shepley, Jr.'s will and one codicil. The issue is whether the trial court violated our previous mandate and the first codicil. We affirm.

## Background

### The Will and First Codicil

Ralph O. Shepley, Jr. executed his last will and testament in 2012 and the first codicil to his will two years later. Shepley named his daughter, Debra Moore Fountain, as the beneficiary of the will. The first codicil directed Shepley's executor to sell a 191.48-acre ranch in Hays County and divide the sales proceeds in equal shares among Fountain, Paws Shelter of Central Texas ("PAWS"), and People for the Ethical Treatment of Animals ("PETA").[2] Shepley devised the ranch under these terms of the first codicil:

> I direct that my real property, consisting of 191.48 +/- acres together with all improvements thereon (the "Real Property") be sold by 80Fountain] and the proceeds divided into three equal shares and distributed to the following individuals and entities under the following conditions and terms:
>
> 1. A one-third (1/3) share to DEBRA MOORE FOUNTAIN; provided, however, if DEBRA MOORE FOUNTAIN fails to survive me, then I leave this one-third (1/3) share to the descendants of DEBRA MOORE FOUNTAIN who survive me, per stirpes.
>
> 2. A one-third (1/3) share to PAWS . . . ; provided that if PAWS is not in existence at the time of my death, then I direct that [Fountain] select an organization with the same vision and mission to receive this gift.

---

[2]      PAWS and PETA are not parties to this appeal.

3. A one-third (1/3) share to . . . PETA; provided that if PETA is not in existence at the time of my death, then I direct that [Fountain] select an organization with the same vision and mission to receive this gift.

PROVIDED, HOWEVER, the sale of the Real Property is to be handled pursuant to the following guidelines: I direct that [Fountain] shall obtain an MAI[3] appraisal on the Real Property from a state certified general real estate appraiser qualified to perform rural ranch property appraisals. The appraiser shall determine the value as of the date of my death and this value shall be used in any Inventory filed in connection with the probate of my estate.

PROVIDED FURTHER, Larry Brewer and Linda Brewer or the survivor thereof, shall have the first right to purchase any or all of the Real Property from the Estate at a sales price equal to the Appraised value of the Real Property as determined above. I suggest that this right of first refusal shall last for a period of six (6) months from the date of the appraisal.

### *The First Appraisal*

Following Shepley's death in 2016, the trial court appointed Fountain as the sole administrator of Shepley's estate. With court approval, Fountain retained Vance E. Powell, III, MAI, as the appraiser of the property. Powell appraised the total property estate at a date-of-death market value of $4,400,000. The Brewers filed a notice to exercise their option to purchase about 20 acres. This area of land consists

---

[3] The term "MAI" refers to a Membership of the Appraisal Institute held by licensed professionals who provide services regarding real property, including opinions of value. *See Gregg Cnty. Appraisal Dist. v. Laidlaw Waste Sys., Inc.*, 907 S.W.2d 12, 18 n.2 (Tex. App.—Tyler 1995, writ denied); *Olson v. Harris Cnty.*, 807 S.W.2d 594, 595 n.2 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

of Shepley's homestead, most of the lake, and the access road to the homestead and the bulk of the property. They attached an earnest money contract to the notice, reflecting the sales price of $794,849.45 based on their own methodology, the sum of the appraised value of the homestead and the value per acre for the vacant ranch.

*The Second Appraisal*

Fountain moved for a second appraisal. She sought "to appraise the tracts resulting from the partition proposed by [the Brewers]." PAWS and PETA objected to the Brewers' exercise of their option to purchase part of the land and requested Fountain to reject the option. The charitable beneficiaries argued that the first codicil did not authorize a per-acre valuation or otherwise include express terms to determine the value of any partitioned area of the property. In other words, they argued that the partial purchase of the property would "result in serious damage to estate assets" and devalue the rest of the land the Brewers did not purchase. PAWS and PETA requested "compensation for the damage caused by the partial purchase of the ranch to the market value of the remainder of the ranch property."

The trial court granted Fountain's motion and ordered Powell to appraise "the tracts resulting from the partition proposed by [the Brewers]." Powell appraised the portion of the land selected by the Brewers at a date-of-death market value of $2,869,592. This value considers the diminution in value of the rest of the property

4

if 21.3 acres were severed and sold. Powell valued the 21.3-acre parcel without consideration of diminution in value to the remainder at $1,280,000.[4]

Mr. Brewer objected, and Fountain, PAWS, and PETA filed responses. Following a hearing, the trial court overruled Mr. Brewer's objections and held that the Brewers had the right to purchase any or all of the land for the appraised value of the entire property. If the Brewers elected to purchase less than all of the real property, then the Brewers were still required to pay the full appraised value, but they had a right to receive an offset reimbursement. Shepley's will and first codicil did not directly or indirectly provide for an offset reimbursement.

### The Brewer I Appeal

Mr. Brewer appealed the trial court's order, challenging the trial court's interpretation of Shepley's first codicil. *Brewer v. Fountain*, 583 S.W.3d 871 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("*Brewer I*"). Mr. Brewer did not assert that the market values in the second appraisal were incorrect. Instead, Mr. Brewer argued that the first codicil unambiguously authorized them to purchase a portion of the property estate at its appraised date-of-death market value. *Id.* at 877. He also argued that the trial court's addition of the offset reimbursement provision exceeded

---

[4]    Powell calculated the market value of this partitioned land by adding the market value of the 4.83-acre homestead ($473,000) and the sum of $49,000 times 16.47 acres ($807,030), totaling $1,280,030. The $30 discrepancy is not in dispute.

the scope of Shepley's intent from the language expressed within the four corners of the testamentary documents.

We held that the terms of Shepley's will and first codicil were "clear and unambiguous" and allowed the Brewers to "purchase the entire 190-plus acres or any part of it." *Id*. at 876–77. We also held that the trial court erroneously added an offset provision not originally contemplated by the will or first codicil. *Id*. at 877. We reversed the trial court's judgment, remanded the case to the trial court, and ordered an appraisal of the parcel selected by the Brewers as of Shepley's date of death "without regard to any diminution in value to the remainder of the property." *Id*. at 877–78. Neither Fountain nor the Brewers moved for reconsideration or petitioned for review.

### *On Remand in the Trial Court*

Fountain and the Brewers submitted proposed earnest money contracts to the trial court. Fountain proposed $1.28 million as the purchase price. Her offer reflected the market value in the second appraisal for the 21.3-acre parcel and excluded the effect of the purchase on the remainder. The Brewers proposed $794,849.45 as the purchase price in their contract. They presented this offer based on their own calculation from the first appraisal: the sum of the "appraised value per acre of the ranch acreage and the appraised value of the homestead estate."

After two hearings on the proposals, the trial court notified the parties that it would order Fountain to execute the earnest money contract for $1.28 million. The Brewers filed a motion to reconsider, arguing that neither the Court's remand instructions in *Brewer I* nor the first codicil authorized a second appraisal. The trial court held a hearing on the Brewers' motion. The trial court approved Fountain's earnest money contract and denied the Brewers' motion to reconsider:

> After considering the pleadings, the record, the Motions and Responses, the arguments of counsel and the Appellate Court's decision of August 13, 2019, the Court finds that [Fountain's] Earnest Money Contract contains a sale price for the 21.3 acres that is based on a Court-ordered appraisal which does not take into consideration damages to the remainder of the ranch. That value is $1,280,000. That appraisal, and the value therein, is compliant with the holdings of the Court of Appeals. The Court finds that the earnest money contract proposed by the Administrator for the sale of 21.3 acres of land to Larry Brewer and wife, Linda Brewer for $1,280,000.00 is consistent with the ruling of the Court of Appeals, is in order, and should be executed, and that such [Fountain] by the Administrator should be granted, and that Larry Brewer and wife Linda Brewer's Motion should be denied.

The Brewers appealed.[5]

---

[5]    We have jurisdiction over this appeal because the trial court's order containing finality language disposed of all pending issues and parties. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001); *Gutierrez v. Stewart Title Co.*, 550 S.W.3d 304, 311 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Vickery v. Gordon*, No. 14-11-00812-CV, 2012 WL 3089409, at *3 (Tex. App.—Houston [14th Dist.] July 31, 2012, no pet.) (mem. op.)) (authorizing appellate review of probate proceedings when "the order must be one that finally disposes of and is conclusive of the issue or controverted question for which that particular part of the proceeding is brought").

**Compliance with Mandate**

In two issues, the Brewers assert that the trial court incorrectly enforced this Court's mandate by ordering the Brewers to pay the market value in the second appraisal. They argue that the trial court's reliance on the second appraisal "ignores the plain language" of the first codicil, "imposes requirements on them not found therein," and "ignores the prior decision of the Court." Because we have already addressed the construction of Shepley's unambiguous will and first codicil in *Brewer I*, the narrow issue here is whether the trial court complied with our mandate.

## A. Applicable law and standard of review

The mandate is the "official notice" from the appellate court to the court below. *Min v. H & S Crane Sales, Inc.*, 472 S.W.3d 773, 778 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). The mandate advises the lower court of the appellate court's action and directs the lower court to have the appellate court's judgment "recognized, obeyed, and executed." *Saudi v. Brieven*, 176 S.W.3d 108, 116 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). When an appellate court remands a case to the trial court, the trial court "has no authority to take any action that is inconsistent with or beyond the scope of that which is necessary to give full effect to the appellate court's judgment and mandate." *Phillips v. Bramlett*, 407 S.W.3d 229, 234 (Tex. 2013); TEX. R. APP. P. 51.1.

On remand, the trial court has a ministerial duty to observe and carry out an appellate court's mandate. *Harris Cnty. Children's Protective Servs. v. Olvera*, 971 S.W.2d 172, 175–76 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (op. on reh'g) (citing *Myers v. Myers*, 515 S.W.2d 334, 335 (Tex. Civ. App.—Houston [1st Dist.] 1974, writ dism'd)). Trial courts must do the best they can to follow the directives in the mandate. *Madeksho v. Abraham, Watkins, Nichols & Friend*, 112 S.W.3d 679, 691 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (en banc). A trial court abuses its discretion when it does not. *Id.* at 685. A trial court abuses its discretion if "it acts without reference to guiding rules and principles such that the ruling is arbitrary or unreasonable." *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020).

## B.    Analysis

Here, we ordered the trial court to enforce our mandate consistent with our in decision in *Brewer I*. The mandate stated, "Accordingly, the Court reverses the trial court's judgment, which erroneously interpreted Ralph O. Shepley, Jr.'s unambiguous will and first codicil and remands the case to the trial court for further proceedings in accordance with the Court's Opinion." We held that "the Brewers may purchase any portion of the property and the value of their selected portion must be appraised as of Shepley's date of death without regard to any diminution in value to the remainder of the property." *Brewer I*, 583 S.W.3d at 877–78. The trial court

was therefore bound by this Court's directive and needed to enforce it. *See Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 408 (Tex. 2016); *City of San Antonio v. Gonzales*, 737 S.W.2d 78, 80 (Tex. App.—San Antonio 1987, no writ) ("[T]he trial court was bound to apply the legal principles pronounced by [the court of appeals].").

Under *Brewer I*, the trial court had to consider evidence from a qualified appraiser to determine the date-of-death value of the land selected by the Brewers. Any damage to the value of the remaining land was not to affect the appraisal value of the 21.3 acres.

The Brewers urge this Court to adopt their own methodology of calculating the value for the land on the first appraisal. We note that the first appraisal occurred before the Brewers selected the land they wanted to purchase. The Brewers did not present to the trial court a competing appraisal report from a qualified appraiser to show why the trial court should have adopted their sales price. Nor did they offer into evidence a competing appraisal report from a qualified appraiser explaining why the trial court should have rejected Powell's valuation in the second appraisal.

After examining the proposed earnest money contracts of Fountain and the Brewers and hearing arguments in support of each, the trial court determined that Powell's second appraisal properly appraised the land without regard to any diminution in value to the rest of the property, and ordered Fountain to execute the earnest money contract for $1.28 million, i.e., the date-of-death market value in the

second appraisal. The trial court's ruling fell within this Court's mandate, and we cannot say the trial court acted arbitrarily or unreasonably. *Brewer I*, 601 S.W.3d at 717. We therefore hold that the trial court did not abuse its discretion by following our mandate and determining that the contract price for the 21.3 acres was $1.28 million.[6]

## Conclusion

We affirm the trial court's judgment.


Sarah Beth Landau
Justice

Panel consists of Justices Keyes, Lloyd, and Landau.

---

[6] We note that the will unambiguously awards one-third of the value of the entire estate to Fountain, one-third to PAWS, and one-third to PETA "per stirpes." Accordingly, regardless of the amount of money the Brewers pay for a portion of the property so bequeathed and the effect of that sale on the value of the remainder of the property, the ultimate value of the entire property at the time of its sale must be divided equally among Fountain, PAWS, and PETA.