# OCTOBER, 1936

## C. P. EVANS V. FRED C. ROPTE.

No. 6713. Decided October 7, 1936.
(96 S. W., 2d Series, 973.)

*J. B. Robertson* and *Dan Moody,* both of Austin, for plaintiff in error.

An easement over and upon realty is deemed an interest in land, over which the courts of another state, or a receiver appointed by a court of another state has no jurisdiction. Moseby v. Burrow, 52 Texas, 396; Holt v. Guergin, 106 Texas, 185, 163 S. W., 10; Henslee v. Boyd, 107 S. W., 128.

*Hart, Patterson & Hart,* of Austin, for defendant in error.

The contract for the sale of the mineral water between the water company and Apple was personal property and an asset of the defendant in the suit of Wilcox v. Apple, in the Circuit Court of Missouri, and the receiver in that case having the right to the possession of said contract, had the right and power to sell same, and the sale by the receiver to Ropte vested right of possession and title in said contract to Ropte. Russell v. Texas & Pac. Ry. Co., 68 Texas, 646, 5 S. W., 255; Zanes v. Mercantile Bank & Trust Co., 49 S. W. (2d) 922; Nagle v. Ferriman, 224 Ky., 540, 6 S. W. (2d) 689.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This suit involves a contest between plaintiff in error, C. P. Evans, and defendant in error, Fred C. Ropte, over the ownership of a contract dated November 26, 1929, between W. W. Robinson and R. & G. Mineral Water Company, parties of the first part, and Charles H. Apple, party of the second part. The district court awarded the contract to Evans and issued an injunction to protect his rights thereunder. The Court of Civil Appeals reversed and rendered the judgment of the trial court. 67 S. W. (2d) 396.

Both parties claimed title to the contract and its rights by assignment. Ropte claimed by virtue of a receivership sale made in a proceeding in the Circuit Court of Jackson County, Missouri. It appears to be admitted that if the contract in question creates an interest in land in Texas, the receivership as to same was without jurisdiction and the sale to Ropte was void. The sole question then is whether the contract created an interest in real estate in Texas.

We take the following statement as to the terms of the contract from the opinion of the Court of Civil Appeals:

This contract recited that "the party of the second part (Apple) desires to secure the exclusive selling privilege of the

R. & G. Natural Mineral Water for the territory of the United States of America," except in Austin and its suburbs, and that the owners of the land and well "are willing to grant such privilege."

Section 1 of said contract grants to said Apple for a period of 50 years "the sole, whole and exclusive selling privileges or selling agency" for the United States, except in the reserved area, of said water.

Section 2 bound Apple to spend $20,000 for advertising said water and placing same on the market.

Sections 3 and 4 obligated Apple to pay the owners 70 cents per case of 12 half-gallon bottles of said water, to be paid at the time shipment from Austin is made; and in any event to pay at least $350 on the first of each month, failure to do so subjecting the contract to forfeiture by the owners.

Section 5 gave Apple or his agents free access to said land on which the well was located at all times; exclusive use of the warehouse for storage, packing, and shipping purposes; and the right to erect on the premises at his own expense additional housing or install additional machinery, same to remain his own property, unless he breached said contract.

Section 6 reserved to the owners the right to remove the warehouse and bottling works to another tract of land, and erect, if they chose, a sanatorium or hotel at said well, and to pipe the water from said well to the newly located warehouse and bottling works. They were not, however, to use such an amount of water from said well as to jeopardize the supply of water needed by Apple to carry out his contract.

Section 7 provided that the contract should cover any additional wells that might be operated on the premises; and sections 8 to 11 provided for settling by arbitration any disputes under the contract. The closing paragraph of the contract recited: "This contract and all its terms and conditions shall extend to and be binding upon the heirs, devisees, executors, administrators, and successors and assigns of the parties hereto."

In construing a contract of this kind courts proceed upon the theory that it conveys by necessary implication the right in the grantee to do whatever is necessary in order to make the grant effective and beneficial. 67 Corpus Juris, page 1082, Section 559, and authorities cited. See particularly the case of Cram v. Chase, 35 R. I., 98, 85 Atl., 642, 43 L. R. A. (N. S.) 824. Looking at the contract as a whole and keeping in mind the dominant thing to be accomplished, towit, the sale of mineral waters in the land to the mutual benefit of all parties, it

grants by necessary implication, if not by express words, the right to enter upon the land and take and appropriate the mineral waters within same, and to do everything necessary and appropriate for the accomplishment of that purpose. This right to take and appropriate the waters was practically unlimited and exclusive, except the parties of the first part might sell in a very limited area and could use the water in connection with a sanatorium or hotel. However, they could not in doing this use such an amount of water from the well as to jeopardize the supply of water needed by the second party to carry out the contract.

■ It seems to be almost universally recognized that a right created by a grant to enter upon land and take and appropriate the waters of a spring or well thereon amounts to an interest in real estate, regardless of the term by which such right may be designated. In some states it is held to be an easement, but in other cases it is held to be more than an easement. In all events, it is an interest in land.

In the case of Texas & P. Ry. Co. v. Durrett, 57 Texas, 48, an instrument was involved which attempted to convey a right of way "together with the use of the wood, timber, water, etc., pertaining to the land so granted and conveyed." This contract affected the separate estate of a married woman and was held void because she had not joined in the execution of same. Among other things the court through Judge Stayton said:

"Such a right as the conveyance by the husband purports to convey, if considered simply as an easement, is an interest in land which could only be created by deed or grant. Speaking of easements and the method of their creation, Mr. Washburn in his work on Servitudes and Easements says: 'Those being interests in land can only be acquired by grant, and ordinarily by deed, or what is deemed to be equivalent thereto, a parol license being insufficient for the purpose.' Washburn's Servitudes and Easements, 23, where the authorities bearing upon this subject are collated.

"The right attempted to be conveyed is, however, more than an easement in the legal acceptation of that term; in addition to granting a mere easement, it attempts to give the right to take something out of and from the soil, which is known in the books as a profit a prendre—a right coupled with a profit. Referring to this subject in his work above referred to, p. 11, Mr. Washburn, commenting upon the case of Post v. Pearsall, 22 Wend., 425, says: 'The distinction seems to be this: if the

easement consist in a right of profit a prendre, such as taking soil, gravel, minerals, and the like, from another's land, it is so far of the character of an estate or interest in the land itself, that, if granted to one in gross, it is treated as an estate, and may therefore be one for life or inheritance.'"

Beginning at page 13 and continuing to page 17 Mr. Washburn in his book on Servitudes and Easements reviews a number of cases and demonstrates that a right to take water from a spring or well is the subject of an independent grant of ownership, and when made constitutes an interest in real estate.

In the case of The Texas Company v. Burkett, 117 Texas, 16, 296 S. W., 273, 54 A. L. R., 1397, the contract in question granted "the exclusive privilege in and to all of the water in the Leon river" upon certain described premises, and made provision for the erection of pumps, etc., upon the land. It was held that the contract was one affecting real estate to such an extent as to be within the statute of fraud.

In the case of Lawrie v. Silsby, 76 Vt., 240, 56 Atl., 1106, 104 Am. St. Rep., 927, will be found a learned discussion of the question. The conclusion reached by the court was to the effect that while water itself might not be the subject of property, yet "the right to take it and the right to have pipes laid in the soil of another for that purpose and to enter upon the land of another to lay, repair and renew such pipes, is an interest in the realty assignable, descendable and divisible."

In the case of Saratoga State Waters Corporation v. Pratt, 227 N. Y., 429, 125 N. E., 834, there is an elaborate discussion of the question. After reviewing numerous cases the court said:

"We are not required to determine whether or not the right to the plaintiff of taking and appropriating the waters of the springs constituted an easement proper or a profit a prendre. It has been held that the waters of a spring are not a part of the soil or a product of the soil, and the taking of them is not a profit a prendre. It may well be doubted that the holding is applicable to the conditions existing in the instant case. There is, however, in judicial opinion, no dissent to the proposition that the right of one taking water from a spring in the land of another is an easement, an interest in the land, and an incorporeal hereditament."

The court manifestly had in mind that the taking of waters from lands where the waters were valuable because of mineral properties was in fact a profit a prendre.

See, also, Rittenhouse v. Swango (Ky.), 97 S. W., 743;

Clement v. Rutland Country Club, 94 Vt., 63, 108 Atl., 843; Village of Brattleboro v. Yauvey, 104 Vt., 314, 143 Atl., 295; Crane v. McMurtrie (N. J. Ch.), 68 Atl., 892.

■ Being of the opinion that the contract in question created an interest in land situated in this State, it follows that the Circuit Court of Jackson County was without jurisdiction to decree a sale of same.

The judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed.

Opinion adopted by the Supreme Court Oct. 7, 1936.