The CITY OF HOUSTON, Petitioner,

v.

Wesley WEST et ux., Respondents.

No. B–4924.

Supreme Court of Texas.

March 26, 1975.

Rehearing Denied April 23, 1975.

Jonathan Day, City Atty., Fred Spence, Asst. City Atty., Houston, for petitioner.

Andrew J. Lannie, Baytown, William E. Watson, Jr., Houston, for respondents.

STEAKLEY, Justice.

The City of Houston instituted eminent domain proceedings to acquire a 20.699 acre tract of land owned by Respondents, Wesley West, et ux, and located within the security fence of William P. Hobby Airport. The Wests objected to the award of the special commissioners and appealed to the County Court at Law. The right of the City to condemn was stipulated and the only contested issue pertained to the value of the property interest taken from the Wests. The jury award of $901,647, and the judgment of the trial court in such sum for the Wests, was appealed by the City and affirmed by the Court of Civil Appeals. 514 S.W.2d 299.

We reverse the judgments below and order the case transferred to the District Court pursuant to the motion of the City at the inception of the proceedings in the County Court at Law. In so doing, we hold that such transfer was mandated by Section 4 of Article 3266a, Vernon's Tex. Rev.Civ.Stat.Ann., which provides:

Sec. 4. In any eminent domain case pending in the county court at law, whenever the judge of the court determines that the controversy involves a genuine issue of title or any other matter which cannot be fully adjudicated in the county court at law, he shall transfer the case to the district court.

As stated, the only issue to be resolved in the appeal of the Wests to the County Court at Law was the value of the property interest taken from them by the City. Unlike the usual situation, the nature of this property interest is disputed and is not determinable in the fact that the Wests held ownership in fee of the tract in question. This is crucially true with respect to the nature of the access rights held by the Wests under a prior contract with the City that arose under the following circumstances.

In 1966 John Mecom and the Wests jointly owned a tract of 51.398 acres that included the 20.699 acres here in question. In that year they conveyed to the City for a consideration of $66,000 a ten acre tract out of their jointly owned tract of 51.398

acres identified as "Tract One." In this contract the City agreed to construct and permit the non-exclusive use by Mecom-West of a public taxiway from the Mecom-West property to the runway system of Hobby Airport, subject to these provisions, among others:[1]

"Mecom-West agrees to contribute to the City the total payment received by Mecom-West from the City for Tract One, and in consideration of such contribution, the City agrees to construct a taxiway located as hereinafter stated and meeting the general standard specifications established by the Department of Public Works & Engineering for taxiways at the Houston International Airport. The City is not required to commence construction of said taxiway until it receives written notice from Mecom-West, addressed to the City's Director of Aviation and Director of the Department of Public Works & Engineering advising the City that, either or both, Mecom-West are ready to commence and will commence within sixty (60) days after construction of said taxiway, and will proceed with diligence to complete the construction of facilities on land herein described as Tract Two and/or Tract Four, which facilities will utilize said taxiway, and upon receipt of such notice, together with the contribution by Mecom-West of the net consideration received from the City for payment of Tract One, the City of Houston shall within ninety days subsequent to such receipt of such notice commence the construction of such taxiway and diligently prosecute the same to completion. Said taxiway shall be not less than fifty (50) feet in width and shall connect the present taxiway designated as 'J.' on the William P. Hobby (Houston International) Airport, with the aforesaid property of Mecom-West at a location approximately fifty-five (55) feet west of the northeast corner of Lot 3, of Orange Dale Subdivision.

"Upon the completion of said taxiway, said taxiway may then be used for ingress and egress to the said airports for aircraft patronizing businesses and business establishments and receiving services located on Tract Two and/or Tract Four, herein described, and for no other purpose, and to serve no other land not owned by the City, except with the written consent of City Council."

Subsequently, the remaining 41.338 acres were partitioned by Mecom and the Wests, after which Mecom sold his tract of 20.699 acres to the City. The 20.699 acre tract partitioned to the Wests is the subject of this proceeding.

The requirements of the foregoing contractual provisions of the 1966 contract have not been performed by either Mecom or the Wests or by the City. Neither Mecom nor the Wests have contributed to the City the $66,000 payment or given written notice to the City of their readiness to commence the construction of the requisite facilities. Construction of the taxiway by the City which could be used by the Wests for ingress and egress to the Airport has not proceeded. Accordingly, the specific provisions of the contract upon which the access right of the Wests to the runway system of the Airport necessarily rest have not been activated.

The City contends here, as it did in the courts below, that the 1966 contract of sale violated the Rule Against Perpetuities by reason of its unlimited time element; that a title question is involved in the determination of whether or not the contract conveyed an easement or any other species of property rights pertaining to access to the Airport runways; and that the County Court at Law erred in admitting the contract into evidence.

The crucial importance of the necessary judicial determination of the nature of the title held by the Wests in the tract in question is seen not only in the preliminary

---

1. Other provisions of the contract are quoted in the opinion of the Court of Civil Appeals and are not repeated here.

problem of whether the contract was properly admitted into evidence upon its tender by the Wests and, if so, for all or only for limited purposes; but in the further fact that the testimony of the appraisal witnesses was predicated on the assumption that the Wests possessed access rights to the runway system of the Airport, which assumption necessarily influenced their opinions of the market value of the tract taken by the City. Indeed, the Wests state in their Answer to the Application for Writ of Error that "All of the value witnesses in estimating the value of the 20.699 acres considered it as having access to the Airport runways."

The Wests state further in their Answer that "Respondents have never claimed to have an easement . . . . The Court of Civil Appeals correctly used the term 'unilateral option' in referring to Respondent's right to have the City build the taxiway." It is apparent that the trial of this proceeding necessarily requires a judicial determination of the nature of the present interest held by the Wests, i. e., whether an existing easement in the nature of a right of way or right to use the property of the City, or present access rights of some other character, or only the right to acquire such upon the happening of uncertain and speculative future events.

The rationale of Coughran v. Nunez, 133 Tex. 303, 127 S.W.2d 885 (1939), is instructive. The problem there was whether the county court had jurisdiction of a suit for injunction in which the plaintiff was asserting rights in the nature of an easement and dedication. Article 5 of the Constitution and the conforming statutes provided that the county court shall not have jurisdiction of suits for the recovery of land. It was there said:

. . . It seems to be certain that plaintiff is claiming to have rights, in the nature of an easement and dedication, to use the water from the spring, to use the pipe line as constructed, and to use the lands over which its support depends. That the rights thus asserted constitute an interest in real estate there can be no doubt. Evans v. Ropte, 128 Tex. 75, 96 S.W.2d 973.

Further in the opinion it was stated that "To assume that he owned the easement is to assume the whole case in his favor;" just, as here, to assume that the Wests held access rights to the Airport runways, as was done by the value witnesses, is to assume the case in favor of the Wests. Indeed, it can be said, as it was reasoned in the cases cited with approval in *Coughran,* that the present ownership of access rights to the Airport runways was a material element in the recovery of the Wests in the County Court at Law.

The statute designated as Article 3266a was enacted by the Legislature in 1971 and captioned as an Act relating to jurisdiction of eminent domain cases and proceedings. Section 4 of the statute is written in broad terms. It requires the transfer to the District Court of any eminent domain case involving an issue of title or any other matter which cannot be fully adjudicated in the County Court at Law. The right of access to the Airport runways is a property right which, if held by the Wests in present ownership, would constitute an interest in real estate. The adjudication of the nature of such rights, together with the resulting effect on the value of the property interest taken from the Wests by the City, are matters which may be fully adjudicated only in the District Court.

The judgments below are reversed and the cause is remanded to the Harris County Court at Law for transfer to the District Court.

Dissenting opinion by SAM D. JOHNSON, J.

SAM D. JOHNSON, Justice (dissenting).

This dissent is respectfully submitted. This writer would adopt the reasoning, language and result of the majority opinion of the court of civil appeals. 514 S.W.2d 299.