# NO. 12-13-00075-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***KEY ENERGY SERVICES, LLC, APPELLANT*** | § | ***APPEAL FROM THE 123RD*** |
| ***V.*** | § | ***JUDICIAL DISTRICT COURT*** |
| ***SHELBY COUNTY APPRAISAL DISTRICT, APPELLEE*** | § | ***SHELBY COUNTY, TEXAS*** |

## *OPINION*

Key Energy Services, LLC appeals from the trial court's judgment affirming Shelby County Appraisal District's (SCAD) valuations of two saltwater disposal wells owned by Key. In seven issues, Key contends the trial court erred in refusing to reduce the valuations, allowing SCAD's expert to testify, determining it had no jurisdiction over Key's challenge to the 2007 tax year assessment, granting SCAD's motion for partial summary judgment, and failing to file findings of fact and conclusions of law. We affirm the trial court's judgment.

## BACKGROUND

Davis Vacuum Services purchased a tract of land and the saltwater disposal well located on it on April 18, 2007. This well was known as the Davis #2. In December 2010, Davis merged with Key Energy Services, LLC. Key calls this well the Davis #5. Key leases the land on which its saltwater disposal well, known as the Davis #3, is located pursuant to a lease with John and Deborah Leggett, the owners of the land. The lease has been in effect since December 2005. Prior to 2007, the wells had been valued at approximately $300,000.00 each for purposes of ad valorem taxation. The valuations increased dramatically in 2007 and remained at that level thereafter. Key protested the valuations for the years 2007 through 2010. The Shelby County Appraisal Review Board heard the protests and determined that it would make no changes. Key

appealed that decision to the trial court for a trial de novo, naming SCAD and the Shelby County Appraisal Review Board as defendants. Key later nonsuited the appraisal review board, and Key's claims against it were dismissed.

Key filed a declaratory judgment action asking the trial court to declare that its protests to the 2007 tax year appraisal and assessment were timely and that the appraisal roll entries for the two wells for the 2007, 2008, 2009, and 2010 tax years are void. Key argued that the appraisal roll entries are void because they fail to appraise the wells in the manner required by law and fail to describe the property accurately or in proper categories. Alternatively, Key challenged the assessments for 2007, 2008, 2009, and 2010 as excessive. Key filed a motion for summary judgment requesting judgment on the 2007 tax year for the well known as the Davis #5 and that the appraisals and assessments for both wells for all four tax years are void for failure to properly describe and categorize the property. Alternatively, Key requested judgment that its challenges concerning the 2007 tax year were timely. SCAD filed a motion for partial summary judgment asking the court to find that the wells are real property subject to taxation. The trial court sent a letter to the parties, on December 17, 2010, asking one of the attorneys to prepare an order reflecting a ruling that Key's motion for summary judgment was denied and SCAD's motion was granted. Key filed a second motion for partial summary judgment requesting a declaratory judgment that the wells are personalty or that the Davis #3 be taxed to the landowner, John Leggett.

SCAD filed a third party petition for declaratory judgment against John and Deborah Leggett, the owners of the land on which the Davis #3 sits, requesting the court determine if the property is taxable to Key or the Leggetts. In response, the Leggetts sought rescission of Key's lease and attorney's fees.

The case was submitted to the trial court without a jury. At the close of the trial, the Leggetts nonsuited their claims against Key. The court denied Key's request to change the valuation of the wells for any of the years under review and denied Key's claims with respect to the 2007 valuation due to lack of jurisdiction. Further, the court denied all requests for relief pursuant to the Uniform Declaratory Judgments Act and ordered each party to bear its own costs and attorney's fees. Key requested findings of fact and conclusions of law but none were filed. Key appealed the trial court's judgment.[1]

---

[1] The Leggetts are not parties to this appeal.

**2007 TAX YEAR**

In its sixth issue, Key asserts that the trial court erred when it determined that it lacked jurisdiction to consider Key's claims concerning the 2007 tax year due to Key's failure to exhaust the required administrative remedies. Relying on tax code Section 31.04(a-1), Key argues that it timely filed a notice of protest with the appraisal review board and timely paid the amount of taxes not in dispute, thus complying with jurisdictional prerequisites. SCAD asserts that Section 31.04(a-1) does not apply because this case presents a supplemental appraisal decision, not an omitted property question. This distinction is important because it dictates the applicable delinquency date.

**Applicable Law**

Subject matter jurisdiction is essential to the authority of a trial court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). The existence of subject matter jurisdiction is a legal question and the standard of review is de novo. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). The failure to exhaust the tax code's exclusive administrative remedies deprives the trial court of jurisdiction to review most adverse ad valorem tax decisions. TEX. GOV'T CODE ANN. § 311.034 (West 2013); *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (per curiam).

Property owners are entitled to administratively protest certain actions to the appraisal review board pursuant to Chapter 41. *See* TEX. TAX CODE ANN. § 41.41(a) (West 2008); *U. Lawrence Boze' & Assocs., P.C. v. Harris Cnty. Appraisal Dist.*, 368 S.W.3d 17, 24 (Tex. App.–Houston [1st Dist.] 2011, no pet.). To take advantage of this option, generally, a property owner must file a written notice of protest within thirty days after the owner receives a notice of the appraised value of the property. *See* TEX. TAX CODE ANN. § 41.44(a) (West Supp. 2013). Likewise, to be entitled to a hearing and a determination of a protest of a supplemental appraisal record, the property owner initiating the protest must file a written notice of the protest with the appraisal review board within thirty days after the date that notice was delivered to the property owner. TEX. TAX CODE ANN. § 25.23(d) (West 2008).

However, tax code Section 25.25 grants a five year window to correct the appraisal rolls under certain limited circumstances. *See* TEX. TAX CODE ANN. § 25.25 (West Supp. 2013). The version applicable to this case states in pertinent part as follows:

3

(c) The appraisal review board, on motion of the chief appraiser or of a property owner, may direct by written order changes in the appraisal roll for any of the five preceding years to correct:

    (1) clerical errors that affect a property owner's liability for a tax imposed in that tax year;

    (2) multiple appraisals of a property in that tax year; or

    (3) the inclusion of property that does not exist in the form or at the location described in the appraisal roll.

Act of May 26, 1979, 66th Leg., ch. 841, § 1, 1979 Tex. Gen. Laws 2218, 2276 (amended 1981, 1989, 1991, 2001, and 2011) (current version at TEX. TAX CODE ANN. § 25.25(c)).

Further, Section 25.25(d) provides that a property owner may file a motion with the appraisal review board to change the appraisal roll to correct an error that resulted in an incorrect appraised value at any time prior to the date the taxes become delinquent. TEX. TAX CODE ANN. § 25.25(d).

## Analysis

The record shows that the subject properties were not included in the original 2007 appraisal roll or tax roll. However, by notice dated September 7, 2007, SCAD notified Davis Vacuum Services of the 2007 appraisal of each well. That notice letter advised Davis that it had until October 9, 2007, to file a written protest with the appraisal review board and even enclosed a form to send in for that purpose. SCAD certified supplemental appraisal records regarding the subject properties on December 26, 2007. On January 10, 2008, SCAD delivered to the Shelby County Tax Assessor-Collector the supplemental appraisal roll containing the two wells. The two accounts were added to the tax assessor-collector's tax rolls on February 11, 2008. The original 2007 tax bills were mailed to Davis Vacuum on February 15, 2008. Davis sent two checks for the base tax amounts to the tax assessor-collector on October 6, 2008. These checks were returned to Davis. On December 16, 2008, Davis filed two protests with the appraisal review board. One is entitled "Motion to Correct Alleged Error in Appraisal Roll." This motion cites to Section 25.25(c) and alleges that the appraisal roll entry reflects a clerical error, multiple appraisals in a tax year, or the inclusion of property that does not exist in the form or at the location described in the appraisal roll. Specifically, the alleged error is described as use of an inappropriate appraisal technique. The second motion is entitled "Motion to Correct Alleged 1/3 Over-Appraisal Error" and is made pursuant to Section 25.25(d) and (e).

4

### *Protest Deadline*

Property owners have the right to protest the appraised value of their property under Chapter 41 of the tax code. *See* TEX. TAX CODE ANN. § 41.41(a). The legislature's intent is that the appraisal rolls become fixed after property owners have been given adequate time to file their protests. *See **Anderton v. Rockwall Cent. Appraisal Dist.***, 26 S.W.3d 539, 543 (Tex. App.–Dallas 2000, pet. denied). For substantive challenges to property appraisals, the legislature has determined that thirty days after receiving notice of appraised value is normally sufficient time within which to file a protest. *See* TEX. TAX CODE ANN. § 41.44(a)(1). Here, the deadline for filing a protest to the 2007 valuation under Chapter 41 was October 7, 2007.[2] *See* TEX. TAX CODE ANN. § 25.23(d). Key missed this deadline.

If a property owner fails to meet the deadline for a Chapter 41 protest, it may still file a motion to correct certain types of errors in the appraisal roll under Section 25.25 of the tax code. In enacting Section 25.25(c) of the tax code, the legislature specifically set forth the limited corrections that may be made to an appraisal roll five years after the date the property values were determined. TEX. TAX CODE ANN. § 25.25(c). The purpose of Section 25.25(c) is to allow late changes to otherwise finalized appraisal records only in situations where the decision to make the change is based on an objective, factual determination and the payment of taxes based on the uncorrected records would be fundamentally unfair. ***GE Capital Corp. v. Dallas Cent. Appraisal Dist.***, 971 S.W.2d 591, 593 (Tex. App.–Dallas 1998, no pet.). These limited corrections include only objective and ministerial matters such as clerical errors. ***Anderton***, 26 S.W.3d at 543. They do not include the substantive reevaluation of a property's market value. ***Id***. Here, the 25.25(c) motion to correct the appraisal roll raised a complaint requesting a substantive reevaluation of the property's market value. Thus, the 25.25(c) motion was not the proper vehicle to address Key's complaint. ***Id***.

### *Date of Delinquency*

Section 25.25(d), however, contains a provision specifically directed at changing the appraisal roll due to an incorrect appraised value. *See* TEX. TAX CODE ANN. § 25.25(d) (West Supp. 2013). This section extends the time to file a challenge to the appraised value of land for properties that have been significantly overvalued due to an error. ***Anderton***, 26 S.W.3d at 543.

---

[2] October 7, 2007 was a Sunday. Monday, October 8, 2007 was Columbus Day. The record does not state whether the appraisal review board was open that day. If it was closed, however, that would explain why the letter stated that Davis had until October 9 to file a protest.

To be entitled to a correction under Section 25.25(d), the motion must be filed before the taxes become delinquent, the incorrect appraised value must exceed the correct appraised value by one-third, and the property owner must pay a penalty. TEX. TAX CODE ANN. § 25.25(d); *Dallas Cent. Appraisal Dist. v. G.T.E. Directories Corp.*, 905 S.W.2d 318, 320 (Tex. App.–Dallas 1995, writ denied).

Here, the parties disagree about the applicable delinquency date. Generally, taxes are due on receipt of the tax bill and are delinquent if not paid before February 1 of the year following the year in which the taxes were imposed. TEX. TAX CODE ANN. § 31.02(a) (West 2008). Therefore, ordinarily, the extension under 25.25(d) ends on February 1 of the year following the tax year, the date the yearly property taxes become delinquent. However, if a tax bill is mailed after January 10, the delinquency date provided by Section 31.02 is postponed to the first day of the next month that will provide a period of at least twenty-one days after the date of mailing for payment of taxes before they become delinquent. TEX. TAX CODE ANN. § 31.04(a) (West 2008). Here, the 2007 tax bill was mailed on February 15, 2008. Relying on Section 31.04(a), under which the delinquency date is April 1, 2008, SCAD argues that the 25.25(d) motion and Key's payment of taxes were late because Key did not meet the April 1, 2008 deadline.

Key asserts that the applicable deadline is provided for in Section 31.04(a-1), which states as follows:

> If a tax bill is mailed that includes taxes for one or more preceding tax years because the property was erroneously omitted from the tax roll in those tax years, the delinquency date provided by Section 31.02 is postponed to February 1 of the first year that will provide a period of at least 180 days after the date the tax bill is mailed in which to pay the taxes before they become delinquent.

TEX. TAX CODE ANN. § 31.04(a-1) (West 2008). Applicability of Section 31.04(a-1) hinges on whether property was "erroneously omitted from the tax roll" in 2007. The chief appraiser's listing of all taxable property in the district and its appraisal value constitutes the appraisal records. *See* TEX. TAX CODE ANN. § 25.01. The appraisal roll with amounts of tax entered as approved by the governing body constitutes the unit's tax roll. TEX. TAX CODE ANN. § 25.24 (West 2008). Key's argument is that, literally, the property did not appear on the tax roll in 2007, but was added in 2008. Therefore, the argument continues, Section 31.04(a-1) applies, making the delinquency date February 1, 2009, after Key attempted to pay the base taxes.

While we appreciate Key's efforts to follow the plain language of the statute, there is a distinction to be made here. As SCAD explains, this was a supplemental appraisal decision, not an omitted property question. Robert Pigg, Chief Appraiser at SCAD, testified by deposition that the two properties had "existed in some form in the past." He explained that the reason the appraisal notices were late was that Pritchard & Abbott (P&A), the private evaluation consulting firm hired by SCAD, was "trying to gather some information to value these the way they felt they should be valued." The critical point is that the appraisal record was supplemented in 2007. The fact that the tax roll was supplemented in 2008 did not turn a late appraisal into an omitted one. Thus, because the property was not "erroneously omitted from the tax roll" in 2007, Section 31.04(a-1) does not apply. Section 31.04(a) applies, making the delinquency date April 1, 2008. Section 42.08 requires the property owner to pay taxes due on the portion of the taxable value of the property that is not in dispute before the date the taxes become delinquent or the property owner forfeits the right to appeal. TEX. TAX CODE ANN. § 42.08 (West Supp. 2013). Section 25.25(e) specifies that the movant must comply with Section 42.08. Key sent two checks for the base tax amounts in October 2008. Key's failure to comply with Section 42.08, and to exhaust the required administrative remedies, deprived the trial court of jurisdiction over the 2007 tax year complaint. *See **Rourk***, 194 S.W.3d at 502. We overrule Key's sixth issue.

**EXPERT TESTIMONY**

In its fourth issue, Key asserts that the trial court erred in denying Key's motion to exclude the testimony of Rodney Kret, SCAD's expert witness. Key contends that (1) Kret's expertise was as a mineral interest appraiser and there is no mineral interest at issue in this case, (2) Kret's appraisal commingles real property and personal property, (3) he used the same framework to appraise both wells even though one was located on land owned by Key and one was located on land leased by Key, (4) he erroneously valued the property based on the gross business revenue received by Key, and (5) Kret testified that P&A categorized the property as personal property, but used the income method to appraise the property.

**Standard of Review**

We review a trial court's evidentiary rulings for abuse of discretion. ***Bay Area Healthcare Group, Ltd. v. McShane***, 239 S.W.3d 231, 234 (Tex. 2007). A trial court abuses its discretion when it acts without regard for any guiding principles. ***E.I. du Pont de Nemours &***

7

*Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). An expert's testimony must be relevant to the issues and based upon a reliable foundation. *See* TEX. R. EVID. 702; *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 628 (Tex. 2002). Expert testimony is unreliable if it is based on unreliable data, or if the expert draws conclusions from his underlying data based on flawed methodology. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997). Likewise, expert testimony lacking a proper foundation is incompetent. *City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005). Expert testimony is also unreliable if there is too great an analytical gap between the data the expert relies upon and the opinion offered. *Zwahr*, 88 S.W.3d at 629. The court's ultimate task, however, is not to determine whether the expert's conclusions are correct, but rather whether the analysis the expert used to reach those conclusions is reliable and therefore admissible. *Id*.

## Analysis

Rodney Kret received a petroleum engineering degree in 1983 and immediately entered the ad valorem tax appraisal industry. He is a registered professional appraiser, employed by P&A, an evaluation consulting firm. *See* TEX. OCC. CODE ANN. § 1151.160 (West Supp. 2013). He has extensive experience appraising property interests in the oil and gas industry. Kret explained that P&A appraises real and personal property separately, but does not list them separately. In other words, the tangible personal property and real property are commingled in an account after they are separately appraised.

Kret explained that the subject property, that being valued, is the same in the Davis #3 and the Davis #5. In both cases, the interest being valued is "the right to inject into a subsurface formation." He clarified that a fee simple interest is not at issue here. The land on which each well is located is listed separately from the interests being litigated. Additionally, many variables were considered to arrive at the taxable value of the wells. Kret specifically noted that P&A assumed a 45% expense burden for both wells. This was a greater burden than actually existed on #5, resulting in a more favorable position for Key. Therefore, whether the land is leased or owned by Key, the subject property is essentially the same in both cases, the right to inject.

The tax code directs the appraisal district to consider the cost, income, and market data comparison methods of appraisal and use the most appropriate method. *See* TEX. TAX CODE ANN. § 23.0101 (West 2008). Kret testified that he routinely uses the income approach to

8

appraise oil and gas production, underground oil and gas storage, and saltwater disposal wells. The income approach to value proceeds on the premise that a buyer of income-producing property is primarily interested in the income that his property will generate. *See Polk Cnty. v. Tenneco, Inc.*, 554 S.W.2d 918, 921 (Tex. 1977). In simple terms, the approach involves estimating the future income of the property and applying a capitalization rate to that income to determine market value. *Id*. The saltwater disposal wells at issue here are income producing properties. Therefore, the income approach to valuation was appropriate.

Finally, Kret testified that the "right to inject" is an "estate or interest in land," a category of real property under Section 1.04(2) of the tax code. *See* TEX. TAX CODE ANN. § 1.04(2)(F) (West 2008). Kret explained that the appraised value is a compilation of several different and separate appraisals. The appraisal model is complicated and took into account both the real property component and the personal property component. Kret explained, "The conclusion of value was, in this case, the replacement cost new limit that we put on the cash flow, the income projection of net income discounted to present value." They used the income approach to value the interest being taxed but used the replacement cost new approach as a limit on the income approach indicator of value. The resulting values represent a combination of real property and business personal property. Thus, the types of property were appraised separately and the income approach was not used on personal property.

Kret, a registered professional appraiser with close to thirty years of experience at the time of trial, explained P&A's methodology. P&A applied their formulas, principles, and economic theories to the specific facts surrounding each saltwater disposal well at issue here to determine the appraised value of each well. Essentially, Key's complaints about Kret's testimony go to its weight, not its admissibility. *See Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 40-41 (Tex. 2007). Kret's calculations were based on quantitative foundational data and followed the methodology approved by Section 23.012. *See* TEX. TAX CODE ANN. § 23.012 (West 2008). The trial court did not abuse its discretion in admitting Kret's testimony. *See Robinson*, 923 S.W.2d at 558. We overrule Key's fourth issue.

### CATEGORIZATION AND DESCRIPTION

In its first issue, Key contends the trial court erred by allowing SCAD to value Key's saltwater disposal facilities as categorized and described when SCAD admitted that the facilities

were made up of both personal and real property and the descriptions were impermissibly vague. Key argues that SCAD was required to identify the property, place it into its proper statutory categories (real or personal), and then describe and value it appropriately. Key contends that SCAD commingled the real and personal property into a single property tax account for each facility. As a result, Key argues, "[T]hese accounts fail as legally inadequate to provide sufficient notice as to what is being taxed." Key requests this court to void the appraisals.

## Analysis

The tax code requires appraisal records to be in a particular form and to include certain specified information. *See* TEX. TAX CODE ANN. § 25.02 (West 2008). The statute also requires the appraisal district to send notice of appraised value to property owners and that notice must include certain information. *See* TEX. TAX CODE ANN. § 25.19 (West 2008). However, Key has not identified the specific SCAD record or document it contends fails to follow the statute. Further, Key has not provided a record reference showing where this issue was raised in the trial court. Key has also failed to provide authority for the assertion that it is entitled to have the appraisals voided based on SCAD's record keeping.

The tax notices we found in the record specified the SCAD property identification number, the name of the well, and the Railroad Commission identification number. Other documents contain the name, the general location, and the Railroad Commission identification number. Kret testified that the real property component was valued separately from the personal property component and then the values were combined. We conclude that SCAD provided sufficient notice as to what it was taxing. Even assuming that sending a tax bill stating the full amount of tax owed without itemizing is error, the supreme court has ruled that including property in an incorrect category does not exempt it from taxation. *See **Matagorda Cnty. Appraisal Dist. v. Coastal Liquids Partners, L.P.***, 165 S.W.3d 329, 335 (Tex. 2005). We overrule Key's first issue.

**PARTIAL SUMMARY JUDGMENT**

In its third issue, Key asserts that the trial court erred as a matter of law by granting SCAD's motion for partial summary judgment and holding that the facilities were composed entirely of real property. Key's argument is based on the faulty assumption that a letter sent to counsel for both parties constitutes a ruling on the motion.

10

Generally, a judgment is rendered when the decision is officially announced orally in open court, by memorandum filed with the clerk, or otherwise announced publicly. *Garza v. Tex. Alcoholic Beverage Comm'n*, 89 S.W.3d 1, 6 (Tex. 2001). The words used by the trial court must clearly indicate the intent to render judgment at the time the words are expressed. *S&A Rest. Corp. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995) (per curiam). A letter to counsel may constitute the pronouncement of judgment if it is in sufficient detail to state the court's decision on all the matters at issue and filed with the clerk. *Gregory v. Foster*, 35 S.W.3d 255, 257 (Tex. App.–Texarkana 2000, no pet.). A letter is not a rendition of judgment if it only indicates the court's intention to render judgment in a certain way and sets out guidelines by which counsel are to draw a judgment. *Id*. Similarly, if a letter contains the language of command that identifies an order, it is an order of the court. *Id*.

More than two years before the final judgment was rendered, SCAD filed a motion for partial summary judgment requesting the court find that the subject property is real property subject to property taxation. Key also filed a motion for summary judgment seeking to resolve the case. Almost exactly two years before the judgment was rendered, the trial court sent a cryptic letter to counsel stating that it had reviewed both motions and responses. The following constitutes the remainder of the letter:

> I am **DENYING** Plaintiff's Motion for Summary Judgment.
> I am **GRANTING** Defendant's Motion for Partial Summary Judgment.
> Mr. Low is directed to prepare an appropriate Order(s) reflecting my rulings for my signature.

The trial court's letter does not clearly indicate the intent to render judgment at the time the letter was signed. *See Greene v. State*, 324 S.W.3d 276, 282-83 (Tex. App.–Austin 2010, no pet.) (judge's letter including present tense language that "judgment is rendered" indicates intent to render judgment at that time). Furthermore, the letter, if a judgment, could only have been interlocutory and its terms were not incorporated in the court's final judgment. The court's letter indicates only the court's intention to render judgment in a certain way in the future and instructed counsel to draft an order for the court's signature. Thus, the letter was not a rendition of judgment. *Gregory*, 35 S.W.3d at 257. We overrule Key's third issue.

In its second issue, Key contends the trial court erred by allowing SCAD to attribute taxable value to Key by categorizing each facility as an "estate or interest" in land when the taxes on the land had already been assessed to Key for one facility and to the Leggetts for the other facility. Specifically, Key argues that by allowing SCAD to attribute a value to the "right to inject" as an estate or interest in real property, the trial court erred as a matter of law because lesser estates are generally nontaxable as separate interests. Key asserts that the value of the entire fee necessarily contains the lesser value of the leasehold the fee contains. Key argues that the tax code prevents its leasehold interest in Davis #3 from being taxed apart from the Leggetts' fee simple interest; otherwise, invalid double taxation results. Likewise, Key asserts, taxing both the facility under its "lesser interest" theory and the land where the #5 is located, which Key owns, caused Key to be taxed twice on the same land.

## Applicable Law

For taxation purposes, real property includes land, improvements, mines, quarries, minerals in place, standing timber, or any estate or interest, other than a security interest, in any of the above. TEX. TAX CODE ANN. § 1.04(2). A single tract may include several of these aspects of realty, or perhaps even all. *Coastal Liquids*, 165 S.W.3d at 332. At least some of these aspects of real property can be taxed separately even though all are part of the same surface tract. *Id*. This rule does not depend on whether each aspect is separately owned. *Id*. Some of the categories used to define real property clearly overlap. *Id*. at 334. The supreme court acknowledged that it is difficult to state a precise rule about what property can be separately assessed. *Id*. Each property should be appraised based upon the individual characteristics that affect the property's market value. *Id*. Furthermore, property cannot escape taxation merely because it is unclear which of the tax code's categories should apply. *Id*. at 334-35.

## Analysis

Kret explained that the interest at issue here is "the subsurface interest, the right to inject into a subsurface formation" that is an interest in real property. This interest is the "estate or interest" in land referenced in tax code Section 1.04(2)(F). Key uses the property to dispose of salt water. P&A appraised the interest "being separately put to some profitable use" that has "value separate from the land, the surface estate, the real estate itself." Kret explained that the

actual well bore is part of it, as well as the pumps and tanks, the business personal property. He specifically stated that the hole is not a taxable item and they did not appraise the business itself.

Robert Pigg, SCAD's chief appraiser, also testified that the wells at issue are categorized as an estate or interest in land pursuant to Section 1.04(2)(F). The taxed property referred to as the wells is made up of this real property portion together with the above ground pumps and tanks, which are personal property. SCAD produced a P&A document describing appraisal of saltwater disposal properties for ad valorem tax purposes. It states that "[t]he real property of a commercial salt water disposal facility is the interest (right) that allows the injection to take place." It goes on to explain as follows:

> The appraisal of this real property (the rights associated with ownership of land) should not be confused with appraisal of the land itself. The 'bundle of rights' that are embedded within fee simple ownership of land require a separate appraisal when monetized to the extent that additional value is evident.

Adding to the confusion is the fact that the "estate or interest" at issue here is a "right" rather than a physical thing. We note other rights have been identified as being an "estate or interest." *See Evans v. Ropte*, 96 S.W.2d 973, 974 (Tex. 1936) (right to enter upon land and appropriate water is interest in land); *Davis v. Vidal*, 151 S.W. 290, 293 (Tex. 1912) (right of re-entry is estate or interest in land); *Lochte v. Blum*, 30 S.W. 925, 927 (Tex. Civ. App.–San Antonio 1895, writ ref'd) (grantor's estate or interest in mortgaged property may be sold, subject to lien created by mortgage); *Shepard v. Galveston, Houston & Henderson Ry. Co.*, 22 S.W. 267, 268 (Tex. Civ. App.–Houston 1893, no writ) (right of way is easement, which is estate or interest in land).

Key owns the saltwater wells, which are, like the storage caverns in *Coastal Liquids*, in active commercial use. *See Coastal Liquids*, 165 S.W.3d at 334-35. A Section 1.04(2)(F) interest in land is taxable. *Id*. Taxation of the land is separate from taxation of the Section 1.04(2)(F) interest around which this litigation centers. *See id*. at 335. Therefore, there is no double taxation. We overrule Key's second issue.

In its fifth issue, Key asserts that the trial court erred as a matter of law by refusing to reduce the excessive valuation of the two saltwater disposal wells. It argues that Rodney Kret's testimony is inadmissible and therefore should be disregarded, leaving only the testimony of Key's expert, Trey Cobb. Key also asserts that Kret erred by valuing the property based on the gross business revenue received by Key. Key argues that this amounts to valuing the business concern and not the ad valorem value of the real and personal property at issue. Further, Key asserts that Kret's testimony is at odds with the court's prior ruling that the property is all real property.

## Standard of Review

When the party who had the burden of proof at trial attacks the legal sufficiency of an adverse finding, that party must show that the evidence establishes, as a matter of law, all vital facts in support of the issue. **Dow Chem. Co. v. Francis**, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In our review, we first examine the record for evidence supporting the adverse finding, crediting favorable evidence, if a reasonable jury could, and disregarding evidence to the contrary, unless a reasonable jury could not. *See* **City of Keller v. Wilson**, 168 S.W.3d 802, 807, 822 (Tex. 2005); **Dow Chem. Co**., 46 S.W.3d at 241. If there is no evidence to support the finding, we examine the entire record to determine if the contrary proposition is established as a matter of law. **Dow Chem. Co.**, 46 S.W.3d at 241. We will sustain the issue only if the contrary proposition is conclusively established. **Id**. A matter is conclusively established only if reasonable people could not differ in their conclusions. **City of Keller**, 168 S.W.3d at 816. The fact finder is the sole judge of the credibility of the witnesses and the weight to give their testimony. **Id**. at 819; **Ford v. Panhandle & Santa Fe Ry. Co.**, 252 S.W.2d 561, 563 (Tex. 1952). It is the fact finder's role to resolve inconsistencies within or conflicts among the witnesses' testimony. **City of Keller**, 168 S.W.3d at 819; **Ford**, 252 S.W.2d at 563.

## Applicable Law

The Texas constitution mandates that no property in this state shall be assessed for ad valorem taxes at a greater value than its fair cash market value. TEX. CONST. art. VIII, § 20. "Market value" means the price at which a property would transfer for cash or its equivalent under prevailing market conditions if (a) exposed for sale in the open market with a reasonable time for the seller to find a purchaser; (b) both the seller and the purchaser know of all the uses

14

and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and (c) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other. TEX. TAX CODE ANN. § 1.04(7) (West 2008). The market value of the property shall be determined by the application of generally accepted appraisal methods and techniques. TEX. TAX CODE ANN. § 23.01(b) (West Supp. 2013). In determining the market value of property, the chief appraiser shall consider the cost, income, and market data comparison methods of appraisal and use the most appropriate method. TEX. TAX. CODE ANN. § 23.0101.

**Analysis**

Robert Pigg, SCAD's chief appraiser, explained that there was a change in the way saltwater disposal wells were valued between 2006 and 2007. He did not think they were being valued correctly so he asked P&A to look at the valuations to try to determine if they were correct. He explained that the wells are being taxed as a real property interest. The wells are real property and the tanks and pumps are personal property, but they are not taxed separately. They combined them with assessments of the wells.

Rodney Kret testified that the tax code does not promulgate any particular method for valuing any particular property. P&A uses the income approach for valuing saltwater disposal wells. The income approach is a projection of future income. Kret explained that the appraised value is a compilation of several different, separate appraisals. Included are various items of personal property along with some real property. They appraise real and personal property separately but do not list them separately. He further explained that the real property interest involved here is not a fee simple interest. The thing being valued is the right to inject and that right to use the property as disposal wells was appraised separately from the fee. Kret explained that historically appraisals of saltwater disposal wells were done on a personal property basis. The personal property interest was the only thing being appraised. He also explained that the value of #3, where there is a lessor payment present, is less than the value of #5 where there is no lessor payment to make.

The record includes exhibits indicating the use of the "Income Approach Discounted Cash Flow Calculation" that resulted in "the present value of the future net income." The report includes the salvage value of the replacement cost new of the well. Kret explained that embedded in that salvage value is a depreciation component. The unit value includes both real

and personal property and is the cost to construct that facility, including drilling and completing the well and installation of surface equipment. The creation of the hole is part of the installation cost. Kret explained that they valued the cost of the facility and drilling the well and applied a percentage to find salvage value, which takes into account all forms of depreciation. He explained that installation cost is a component part of "replacement cost new" for property that is installed somewhere. He clarified that the replacement cost new captures all costs to create this facility, including all the engineering and overhead, all the labor costs and materials, and the tangible personal property. He explained that they do not list specific pumps, pipes, and tanks. Instead, they use a mass appraisal figure that includes what is typical for the type of property they are appraising. They used a linear cost, dollars per foot, related to the depth of the well. They consulted Railroad Commission records to determine the volume of water that has been disposed of in each well.

Summing up the approach used by P&A, Kret stated, "The conclusion of value was, in this case, the replacement cost new limit that we put on the cash flow, the income projection of net income discounted to present value." This is a discounted cash flow analysis. The calculations include a ten year projection of future net revenue. He explained that number of barrels times price equals gross revenue stream. Expenses of operation are allowed against the gross revenue to arrive at a net income stream. Future net income figures are discounted to present value. Kret stated that income derived on an income producing property is the basis of the appraisal. He explained that the wasting asset in the saltwater disposal well is the ability of the reservoir to accept the water. P&A applied the same estimated expense burden to both wells. Due to the absence of a payment to the landowner in the case of well #5, this amounted to a greater expense burden on the #5 than actually existed, which Kret characterized as a gift to the taxpayer. Clarifying, Kret stated that they used the income approach to value the property but they applied a limit on that concluded value. They used a different approach as a limiting factor. The replacement cost new approach was used as a limit on the income approach indicator of value to determine the certified value.

Among numerous documents SCAD introduced is a paper Kret authored describing the process of appraising saltwater disposal properties for ad valorem tax purposes. In it, he explained that a replacement cost new less depreciation cost approach methodology is best suited for appraising the tangible personal property component of saltwater disposal wells. However,

the income approach to value is the most appropriate way to appraise the real property of a saltwater disposal facility, which is the interest or right that allows the injection to take place. The relevant income to analyze is net of all expenses of operation and taxes; in other words, the profitability. The income the appraiser forecasts represents future profit potential.

In arguing this issue, Key first urges us to disregard Kret's testimony. As we have already explained, that testimony was admissible and we shall not disregard it. We have also already determined that the trial court did not render judgment that the wells are solely real property, and the wells were properly identified as a Section 1.04(2)(F) interest in real property.

Key asserts that the controlling case on valuation is *Gregg County Appraisal District v. Laidlaw Waste Systems, Inc.*, 907 S.W.2d 12 (Tex. App.–Tyler 1995, writ denied). That case concerned valuing a 250 acre tract of land used as a landfill, but the discussion of the appraisal methodology was in the context of whether the appraisal reports were admissible. This court held that the trial court had properly excluded evidence that focused on Laidlaw as a going concern including its state permit and private contracts, which constitute intangible personal property. *Id*. at 19. Further, the proffered appraisal testimony commingled the value of the business with the value of the property. *Id*. at 20. The excluded appraisal reports did not identify what part of Laidlaw's income was derived from the land and what part was attributable to the other assets, such as contracts and business acumen in running the company. The appraisal reports were deemed inadmissible because they included some factors that would confuse the jury. *Id*.

Here, Kret specifically stated that P&A did not appraise the business itself; they appraised the use of the property. The appraisal is based on the use of the land for commercial saltwater disposal purposes. Key overlooks the fact that, in *Laidlaw*, the trial court had explained that it would allow evidence dealing with the usage of the property and residual values, but that evidence was not offered in that case. *Id*. at 19.

In *Laidlaw*, the trial court properly admitted into evidence an appraisal using the income method that involved estimating future lease proceeds, deducting appropriate expenses, and then discounting the figures to the present worth. *Id*. at 18. Here, P&A used an income method involving the future profit potential, deducting expenses of operation, and applying the replacement cost new approach as a limit to determine the certified value. *See* TEX. TAX CODE ANN. § 23.012.

17

Each property should be appraised based on the individual characteristics that affect the property's market value. *Coastal Liquids*, 165 S.W.3d at 334. It is undisputed that the wells are income producing. SCAD presented evidence that it is appropriate to use the income approach to value income producing property. The income approach is a generally accepted appraisal method. *See* TEX. TAX CODE ANN. § 23.0101. Each appraisal incorporated an income approach and a cost approach. Kret described a laborious process using as much data as P&A was able to obtain. An approach using two or more appraisal methods may be used, provided that the method chosen as a whole generates relevant and reliable evidence of market value. *Houston R.E. Income Props. XV, Ltd. v. Waller Cnty. Appraisal Dist.*, 123 S.W.3d 859, 860-63 (Tex. App.–Houston [1st Dist.] 2003, no pet.).

Key presented as its expert Trey Cobb, a licensed property tax consultant. He explained that, prior to 2007, saltwater disposal wells were appraised as business personal property and the only thing being appraised and assessed was the surface equipment. He stated that the cost approach, and not the income approach, is used to value business personal property. He rejected P&A's new method of appraising the wells, arguing that in order to appraise the wells, you simply capture the value of the business personal property. Cobb asserted that the value of the leasehold interest of #3 is subsumed within the value of the fee simple interest for the land, which is owned by the Leggetts. He argued that for #3, the well bore value would not be included in the appraisal of Key's property because the Leggetts own the well bore. He did not include actual income or the sales price of #5. As explained above, the use of the land is a separate interest from the fee. The record includes evidence supporting the trial court's determination of the valuation of the wells. The fact that another methodology had previously been used does not establish as a matter of law that the current method is invalid. The trial court was free to disregard conflicting testimony. *City of Keller*, 168 S.W.3d at 819. Key did not meet its burden to show as a matter of law that the trial court erred by refusing to reduce the valuation of the two saltwater disposal wells. *See Dow Chem. Co.*, 46 S.W.3d at 241. We overrule Key's fifth issue.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In its seventh issue, Key contends the trial court erred in failing to file findings of fact and conclusions of law. Key argues that it timely filed a request for findings of fact and

18

conclusions of law and later a notice of past due findings and conclusions. Because the trial judge stepped down from the bench before responding, Key argues that it is unable to "effectively brief against the findings and conclusions that will now never come." Key asserts that injury is presumed and remand for a new trial is warranted.

A request for findings of fact and conclusions of law must be filed within twenty days after the judgment is signed. TEX. R. CIV. P. 296. If none are filed by the court, the party making the request shall file a notice of past due findings of fact and conclusions of law within thirty days after filing the original request. TEX. R. CIV. P. 297.

The judgment was signed on December 21, 2012. Key's request for findings of fact and conclusions of law was due on January 10, but filed on January 11, 2013. The notice of past due findings of fact and conclusions of law was due on February 11,[3] but filed on February 15, 2013. Thus, because Key's request was not timely, the trial court was not required to file findings of fact and conclusions of law. *See* ***Williams v. Kaufman***, 275 S.W.3d 637, 642 (Tex. App.– Beaumont 2009, no pet.). Furthermore, automatic reversal would not be warranted here even if Key's requests had been timely. A trial court's failure to file findings and conclusions is not harmful error if the record before the appellate court affirmatively shows that the complaining party suffered no injury. ***Cherne Indus., Inc. v. Magallanes***, 763 S.W.2d 768, 772 (Tex. 1989). The error is harmful if it prevents an appellant from properly presenting a case to the appellate court. ***Tenery v. Tenery***, 932 S.W.2d 29, 30 (Tex. 1996). Thus, an appellant is harmed if it must guess the reason or reasons the judge ruled against it. ***Holmes v. Williams***, 355 S.W.3d 215, 222 (Tex. App.–Houston [1st Dist.] 2011, no pet.). On page 62 of its brief, Key asserts that it "is left without the ability to effectively brief against the findings and conclusions that will now never come." However, this statement is not supported by argument. Key did not explain the significance of findings that the trial court did not make and how they relate to some issue on appeal. There is clearly ample evidence in the record showing the basis of the trial court's ruling. Key's brief adequately covered the issues in the case. We overrule Key's seventh issue.

---

[3] The thirtieth day after January 11 was Sunday, February 10. Therefore, notice was due February 11, 2013. TEX. R. CIV. P. 4.

## CONCLUSION

The trial court did not have jurisdiction to consider Key's claims concerning the 2007 tax year. SCAD provided adequate notice as to what was being taxed and properly categorized the wells as an estate or interest in land. The trial court's letter to the parties did not constitute a ruling on SCAD's motion for partial summary judgment. The trial court did not err in admitting SCAD's expert's testimony, refusing to reduce the valuation of the wells, or by failing to file findings of fact and conclusions of law. Accordingly, we *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered January 15, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

20



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JANUARY 15, 2014

NO. 12-13-00075-CV

**KEY ENERGY SERVICES, LLC,**
Appellant
V.
**SHELBY COUNTY APPRAISAL DISTRICT,**
Appellee

Appeal from the 123rd District Court

of Shelby County, Texas (Tr.Ct.No. 08CV30,196)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**; all costs of this appeal are hereby assessed against Appellant, **KEY ENERGY SERVICES, LLC**, for which execution may issue; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*